In re Patricia L. OBERST, etc., Debtor.

Kieran James OBERST, Plaintiff,

v.

Patricia L. OBERST, etc., et al., Defendants.

Bankruptcy No. LA 86–22788–GM.

United States Bankruptcy Court,
C.D. California.

Sept. 29, 1988.

Michael Leight, Seal Beach, Cal., for plaintiff Kieran Oberst.

Elliott Gayer, Costa Mesa, Cal., for defendant Patricia Oberst.

## MEMORANDUM OF OPINION

GERALDINE MUND, Bankruptcy Judge.

On November 26, 1986, Patricia Oberst, former spouse of Kieran Oberst, transferred by grant deed a one-half interest in her home to George Templin, III, simultaneously executed a new deed of trust to Home Savings of America for the sum of $82,000, and executed a second deed of trust to James Dunk for $7,000. By the refinance with Home Savings and the new second deed of trust, Ms. Oberst effectively removed all of the non-exempt equity of her home. During the next six days she spent all of the proceeds of the two loans (approximately $14,000) and on December 3, 1986, she filed this bankruptcy petition.

Kieran Oberst filed a complaint to declare that the transfer to Templin was a fraudulent transfer, and to deny Patricia Oberst a discharge for removing assets of the estate in contemplation of bankruptcy and with intent to hinder, delay or defraud her creditors, and also to deny discharge on grounds that she did not disclose these transfers in her bankruptcy schedules and statement of affairs.

The Court heard testimony and reviewed the evidence and ruled that the transfer to George Templin was for purposes of obtaining the refinance of the house and not with any intent to transfer an actual interest to him. This was known to Home Savings and was not relied upon by them. The property is property of the estate and, in fact, Templin had executed a quitclaim deed to debtor (which had not been recorded so as to prevent triggering of a due-on-transfer clause). The Court ruled that title to this property was in the debtor and in the debtor's estate.

As to the transfer to James Dunk, the Court found that there was adequate consideration for that transfer and that the transfer could not be set aside.

As to the allegation that the debtor swore a false oath in failing to reveal her transfers in her statement of affairs, the Court ruled in favor of the debtor. Although the debtor did not reveal these transfers in paragraph 14 of the statement of affairs, the grant deed to Templin was not a "transfer" or a gift and did not really fit the category as described in paragraph 14. The deed of trust to Dunk was revealed in schedule A of the bankruptcy petition and the failure to place it in paragraph 14b of the statement of affairs does not appear to have been done with intent.

The Court submitted the matter on the issue of whether discharge should be denied for the actions of November 26, 1986 when Ms. Oberst refinanced the property, took a second deed of trust, and then spent the proceeds before filing bankruptcy. The facts that the Court found on this are as follows:

Kieran Oberst had obtained a judgment of dissolution against the debtor in 1984. The order of dissolution required Ms. Oberst to pay her husband the sum of $16,833.34 as her half of the community indebtedness on a fishing boat. She did not pay this and on September 9, 1986, Kieran Oberst filed a motion for issuance of a writ of execution. The hearing was scheduled for October 22, 1986, at which time Ms. Oberst requested a continuance so that she could seek legal counsel. The

continuance was granted and it is this request for a writ of execution that triggered the refinance and then the bankruptcy.

Had the writ of execution been granted, there was sufficient non-exempt equity in the house to pay the entire judgment against her. It is this equity that she removed just prior to the bankruptcy. She then transferred some of the equity into preferential payments (such as payment of prior legal fees). She also transferred much of the money into exempt items (i.e., an IRA, household goods and furnishings, and a florist's refrigerator and supplies). The rest was used to pay minor bills, for gifts to the couple's daughter, and to prepay various types of insurance.

As soon as the money was spent, she filed this bankruptcy petition.

Had the money been secreted or the property been transferred for less than fair consideration, the law is clear that discharge should be denied. But this case is somewhat unusual because the money was openly spent for apparently proper purposes and the issue here is whether the fact that she reacted to the possible creation of a lien by her ex-husband is sufficient to meet the requirements of Section 727(a)(2).

The Court has looked for guidance in this grey area between "bankruptcy planning" and "intent to hinder, delay or defraud a creditor." The recent opinion of *In re Marvin Jerry Fine*, 89 B.R. 167 (Bankr. Kansas 1988), deals with the tension between the Congressional intent that a prospective debtor take full advantage of his exemptions by converting non-exempt property into exempt property before bankruptcy (H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 76 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5861, 6316), and the requirement that the transfer cannot be with the intent to hinder, delay or defraud a creditor.

In analyzing the current state of the law, the court noted the following:

"To determine whether the debtor converted non-exempt assets to exempt assets with the intent to hinder, delay, or defraud a creditor, courts rely on so-called 'badges' or 'indicia' of fraud, such as: (1) the objecting creditor had a 'special equity' in the non-exempt property which is converted into exempt property; (2) the debtor and the transferee enjoyed a family, friendship, or close associate relationship; (3) the debtor retained the possession, benefit, or use of the property in question; (4) the debtor engaged in a sharp pattern of dealing immediately before bankruptcy; (5) the debtor became insolvent as a result of the transfers (financial condition); (6) the conversion occurred after the entry of a large judgment against the debtor; (7) the debtor received inadequate consideration. *See Collier on Bankruptcy,* supra. While not every circumstance need be shown, there must be sufficient indicia to rise to the level of clear and convincing evidence that the debtor intended to hinder, delay, or defraud creditors."

*In re Fine,* at 174.

In many cases there is an actual creditor who is about to force payment of an obligation and then the transfer of assets takes place. When this happens, the courts have usually denied discharge. *See* for example, *In re Marcus,* 45 B.R. 338 (Bankr. S.D.N.Y.1984); *In re Ford,* 773 F.2d 52 (4th Cir.1985) *In re Schmit,* 71 B.R. 587 (Bankr.Minn.1987).

The decision in *In re Johnson,* 80 B.R. 953 (Bankr.Minn.1987) is the exception to the rule. In that case the debtor had substantial income. Due to some business debts he was the defendant in various collection cases and judgments had been entered against him in several of these matters. Judgment debtor examinations were proceeding at the time that he transferred non-exempt assets into exempt assets (all for fair consideration) and then filed bankruptcy. The Court found that § 727(a)(2) serves "a punitive function, by denying discharge to debtors who have committed serious wrongdoing.... The most the record shows is that the Debtor engaged in a conscious, directed effort to maximize the benefit of statutory exemptions available to him, without engaging in any fraud...."

Intent of a character so malign as to merit the harshest sanction in bankruptcy should not be attributed to a debtor who does this, and nothing more." *Ibid* at 960-1.

■ The Court in the *Johnson* case agonized because of the tension between the right of the debtor to participate in estate planning and the requirement that he not do so with the intent to hinder, delay or defraud a creditor. The court resolved it by requiring the plaintiff to prove almost a criminal level of wrongdoing and a malign intent. Unfortunately, this was not the requirement established by Congress and for that reason this Court believes that there is a lower level of proof; only the requirement of clear and convincing evidence that the debtor intended to remove the asset from the grasp of her creditor.[1]

■ In this case the intent of the debtor to remove the asset from the possible execution by the ex-husband is clear. She delayed the state court proceeding and then took almost every cent of non-exempt equity out of the house. She made preferential transfers with the money, pre-paid items for her future benefit, and created as many exemptions as she could with the monies available. Then she filed bankruptcy and now seeks a discharge so that she will no longer have to pay the state court judgment.

The most similar set of circumstances reported by an appellate court is that of *In the Matter of Reed*, 700 F.2d 986 (5th Cir. 1983). There the debtor liquidated non-exempt assets and used the proceeds to reduce the mortgages and thereby create a better homestead exemption. This was done during the two weeks prior to bankruptcy and was during a period of agreed-upon delay with his principal creditor. Reed had requested a moratorium from his creditor and it was during that hiatus period that the liquidation and ultimately the bankruptcy took place. It was a combination of the delay and the liquidation, followed immediately by bankruptcy, that the

court found to show that there was an intent to hinder, delay, or defraud a creditor. After looking at the legislative history of § 727(a)(2), the court went on to state the following:

"In this respect, 11 U.S.C. § 727(a)(2) is absolute: the discharge shall be denied a debtor who has transferred property with intent to defraud his creditors. The legislative history of the exemption section, as noted above, does not mean that conversion is never fraudulent as to creditors, but simply that, as under prior law, mere conversion is not to be considered fraudulent unless other evidence proves actual intent to defraud creditors. While pre-bankruptcy conversion of nonexempt into exempt assets is frequently motivated by the intent to put those assets beyond the control of creditors, which is, after all, the function of an exemption, evidence of actual intent to defraud creditors is required to support a finding sufficient to deny a discharge." *In the Matter of Reed, supra,* at 991.

The *Reed* Court particularly found that the intent to defraud was inferred by the fact that the debtor had arranged with his creditors to be free of payment of obligations until the following year and then rapidly converted non-exempt assets into exempt ones by reducing the mortgages on his home. His fraudulent intention was further confirmed by the fact that he diverted the daily business receipts into an unknown account and then used those receipts to repay a loan that had permitted him to convert from non-exempt to exempt. The Court therefore denied discharge.

While this Court is sympathetic to the emotions created by a dissolved marriage, it cannot condone what is essentially an act of fraud and spite. The behavior by Ms. Oberst was an attempt to drain her estate of assets, create preferences around the obligation to her ex-spouse, and protect her future while delaying him in his acts of collection. This cannot be condoned.

---

1. There is no dispositive case in the Ninth Circuit on the level of proof. However, there is a determination that the discharge statute is to be construed liberally in favor of debtor. *In re*

*Devers* (9th Cir.1985), 759 F.2d 751. This requires more than a mere preponderance on the evidence.

This Court cannot agree with the holding of the *Johnson* case for such a holding negates the statute. While the Court finds it very difficult to locate the exact line between bankruptcy planning and hindering creditors, Congress has decided that the key is the intent of the debtor. If the debtor has a particular creditor or series of creditors in mind and is trying to remove his assets from their reach, this would be grounds to deny the discharge. If the debtor is merely looking to his future wellbeing, the discharge will be granted. This is an uncomfortable test and does not seem equitable; but it is the law.

In the Ninth Circuit the case of *In re Adeeb*, 787 F.2d 1339 (9th Cir.1986) indicates that the intent can be vitiated by reliance on advice of counsel, complete disclosure, and then reversing the transfers so that the creditors can recover substantially all of the transferred property. There is no showing in the case before this Court that Ms. Oberst relied on the advice of counsel in setting up these transfers, nor that she replaced the money at the disposal of her creditors.

Because of the foregoing, this Court finds that the debtor withdrew virtually all of the non-exempt equity from her home for the purpose of hindering her ex-spouse from collecting on the judgment that he was seeking from the Superior Court. Therefore, she is denied discharge pursuant to 11 U.S.C. § 727(a)(2).

This Memorandum of Opinion together with the Findings made orally at trial constitutes the Findings of Fact and Conclusions of Law.

## JUDGMENT DENYING DISCHARGE

The Complaint of Kieran Oberst to deny Patricia Oberst a discharge for removing assets of the estate in contemplation of bankruptcy and with intent to hinder, delay and defraud her creditors, to declare that the transfer of assets to George Templin, III was a fraudulent transfer, and to deny the discharge of Patricia Oberst on grounds that she did not disclose these transfers in her bankruptcy schedules and statement of affairs came on for trial on May 12, 1988, at 1:30 P.M. in Courtroom "G" of the above entitled Court, the Honorable Geraldine Mund presiding. The Court heard the evidence and ruled on the record concerning the transfer to George Templin and the disclosure of the transfers in the bankruptcy schedules. However, the Court submitted the matter concerning the denial of discharge for removing assets of the estate with intent to hinder, delay or defraud a creditor. Simultaneously herewith the Court files its Memorandum of Opinion which, with the findings previously made on the record, constitutes findings of fact and conclusions of law on this matter.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS;

1. As to the claim that the transfer to George Templin, III was a fraudulent transfer, judgment is granted to the defendant on the grounds that the transfer was for purposes of obtaining the refinance of the house and not with any intent to transfer an actual interest to George Templin, III. Title to this property is in the debtor and in the debtor estate.

2. As to the transfer to James Dunk, adequate consideration exists for that transfer and that transfer cannot be set aside.

3. As to the claim that the debtor swore a false oath in failing to reveal these transfers in her statement of affairs, judgment is granted to the debtor.

4. As to the claim that the debtor should be denied discharge for removing assets of the estate in contemplation of bankruptcy and with the intent to hinder, delay or defraud a creditor, judgment is granted to the plaintiff and the debtor is hereby denied discharge pursuant to 11 U.S.C. § 727(a)(2).