**In re Walter DAVIDSON and Marian Davidson, Debtors.**

**AMERITRUST NATIONAL BANK, n/k/a Society Bank & Trust, Plaintiff,**

v.

**Walter DAVIDSON and Marian Davidson, Defendants.**

**Robert FURR, Trustee, Plaintiff,**

v.

**Walter DAVIDSON and Marian Davidson, Defendants.**

**Bankruptcy No. 92–32673–BKC–SHF. Adv. No. 93–0159–BKC–SHF–A.**

United States Bankruptcy Court, S.D. Florida.

Feb. 24, 1994.

784

Kenneth S. Rappaport, Boca Raton, FL, for Ameritrust Nat. Bank.

Leslie Gern Cloyd, West Palm Beach, FL, for Walter Davidson and Marian Davidson.

Leslie S. Osborne, Boca Raton, FL, for Robert C. Furr, Trustee.

## MEMORANDUM DECISION

STEVEN H. FRIEDMAN, Bankruptcy Judge.

This matter came on for trial before the Court on December 29, 1993, on the amended complaint filed by Ameritrust National Bank, n/k/a Society Bank & Trust ("Ameritrust"), a creditor, and Robert Furr, Trustee (the "Trustee") (collectively the "Plaintiffs"), objecting to the debtors', Walter and Marian Davidson (the "Debtors"), discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(4) and (a)(5). The Court, having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the argument of counsel, and for the reasons set forth below, finds that Marian Davidson transferred property from non-exempt status to exempt status with the intent to hinder or delay Ameritrust.

## FACTS

The pertinent facts in this case are undisputed. Between May 1990, and September 1990, Ameritrust extended seven different loans, totalling $177,750, to Walter Davidson. Between January 17, 1987, and July 7, 1990, Marian Davidson guaranteed the loans up to $172,500. Eventually, Walter Davidson defaulted on the loans and in August 1991, Ameritrust filed a lawsuit in Indiana which sought a judgment against both Debtors.

In June 1992, before the lawsuit was filed, Marian Davidson sold a diamond bracelet for $93,000. From the proceeds, $60,000 was used to purchase a certificate of deposit and the remainder was placed in a checking account. On October 7, 1991, $55,000 was placed in a joint account (the "Joint Account").

In July 1991, Marian Davidson listed her Indiana home, which was not homestead property, for sale. On November 1, 1991, she entered into a Contract to Purchase the home with Maurice Norman. The house was sold for $140,000 on December 11, 1991. Contemporaneously with the sale, the Debtors entered into a lease agreement with the purchaser whereby the Debtors agreed to lease the home for two years. The Debtors paid the purchaser $28,800 in advance to cover the entire two years' rent. From the remainder of the sale proceeds, $94,586.05 was placed in the Debtors' Joint Account.

On December 20, 1991, Ameritrust obtained a judgment against the Debtors in the combined amount of $214,759.74 (the "Judgment"). A day earlier, Marian Davidson withdrew $144,766.02 from the Joint Account and purchased a $100,000 annuity in her name (the "Annuity"). With the remaining $44,766, Marian Davidson opened and deposited $15,000 in a money market account, opened and deposited $15,000 in a checking account, opened and deposited $10,000 in a savings account at Sun Bank and opened and deposited the remainder in a checking account, also at Sun Bank.

On August 6, 1992, the Debtors filed a Chapter 7 petition. As of that date, the Debtors listed account balances of $.61 in the money market account, $.05 in one checking account and $55.98 in the Sun Bank checking account. The Sun Bank savings account was not listed on the Debtors' schedules. The Debtors listed on their schedules $405,636.64 in assets of which all, except the prepaid rent on the Indiana home and Marian Davidson's interest in a partnership valued at $1,000, was claimed as exempt.

## DISCUSSION

### A. DENIAL OF DISCHARGE

1. Denial of discharge pursuant to § 727(a)(2).

The Plaintiffs assert that the Debtors should be denied their discharge pursuant to

Bankruptcy Code Sections 727(a)(2), (a)(4) and (a)(5). The Plaintiffs contend that the Debtors' December 19, 1991, transfer of the proceeds from the Debtors' Joint Account to the Annuity is evidence of their intent to hinder, delay or defraud a creditor. The Plaintiffs also point to the Debtors' retention of a leasehold interest in the home and the payment of rent two years in advance as further evidence of the Debtors' intention. For these reasons, the Plaintiffs assert that the Debtors' discharge should be denied pursuant to Section 727(a)(2).

 For a party to prevail on a claim under Section 727(a)(2)(A) the party must prove: (1) that a transfer occurred; (2) that the property transferred was property of the estate; (3) that the transfer occurred within one year of the Petition; and (4) that at the time of the transfer the debtor possessed a requisite intent to hinder, delay, or defraud a creditor. *Marine Midland Bank, N.A. v. Mollon*, 160 B.R. 860 (M.D.Fla.1993). Although the parties do not dispute that a transfer occurred, there is at least one court that has found that the conversion of non-exempt assets to exempt assets does not constitute a transfer. In *In re Schwarb*, 150 B.R. 470 (Bankr.M.D.Fla.1992), Judge Paskay reasoned that because the term "transfer" presupposes a transferor and a transferee and because in a case of a conversion of assets from non-exempt to exempt the transferor and transferee are identical there could not be a "transfer" by such a conversion. This Court does not agree with the rationale in *Schwarb*.

Bankruptcy Code Section 101(54) defines "transfer" as—

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

The Senate Report referring to this definition states that "[t]he definition of transfer is as broad as possible.... any transfer of an interest in property is a transfer.... A deposit in a bank account or similar account is a transfer." *Matter of Smiley*, 864 F.2d 562 (7th Cir.1989), *quoting* S.Rep. No. 95-989, 95th Cong.2d Sess. 26–27 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5813. The last sentence of the Senate Report indicates that Congress intended that the deposit of funds in a bank account or the purchase of an annuity would constitute a transfer. Therefore, the Debtors' purchase of the Annuity is a transfer as defined under the Code.

 The parties dispute whether at the time of the transfer the Debtors intended to hinder, delay, or defraud a creditor or an officer of the estate. It is well established that the mere conversion of non-exempt assets is not to be considered fraudulent unless other extrinsic evidence of fraudulent intent is present. *See, In re Carey*, 938 F.2d 1073, 1076 (10th Cir.1991); *Matter of Bowyer*, 916 F.2d 1056, 1059 (5th Cir.1990); *In re Johnson*, 880 F.2d 78, 81 (8th Cir.1989); *In re Smiley*, 864 F.2d 562, 566 (7th Cir.1989); *but see In re Schwarb*, 150 B.R. 470 (Bankr. M.D.Fla.1992). Although these four Circuits use the word "fraud" to state when a conversion of non-exempt assets may result in the denial of a debtor's discharge, they are split as to whether fraud must be proven. The Eighth and the Tenth Circuits require that a debtor's fraudulent intent at the time of the transfer be shown. The Fifth and Seventh Circuits do not require that fraudulent intent be shown but require that a conversion be done with the intent to hinder or delay a creditor. The "term 'defraud' does not subsume 'hinder or delay'." *Bowyer*, 916 F.2d at 1059. This Court agrees with the Fifth and Seventh Circuits that it is not necessary that a debtor's conduct reach the level of fraud before the discharge can be denied under Section 727(a)(2). Instead, there must be a showing that at the time of the transfer the debtor intended to hinder or delay a creditor.

This Court has struggled with determining at what point a debtor's pre-bankruptcy planning becomes an intent to hinder or delay a creditor. One court has concluded that—

> If the debtor has a particular creditor or series of creditors in mind and is trying to remove his assets from their reach, this would be grounds to deny the discharge.

If the debtor is merely looking to his future wellbeing, the discharge will be granted.

*In re Oberst,* 91 B.R. 97, 101 (Bankr.C.D.Cal. 1988). Other courts have looked at other "badges" or "indicia" of fraud, such as

(1) the objecting creditor had a "special equity" in the non-exempt property which is converted into exempt property; (2) the debtor and the transferee enjoyed a family, friendship, or close associate relationship; (3) the debtor retained the possession, benefit, or use of the property in question; (4) the debtor engaged in a sharp practice of dealing immediately before bankruptcy; (5) the debtor became insolvent as a result of the transfers (financial condition); (6) the conversion occurred after the entry of a large judgment against the debtor; (7) the debtor received inadequate consideration.

*Oberst,* 91 B.R. at 99. Not every circumstance must be shown, but there must be sufficient indicia for the creditor to meet its burden. *Id.* The only "badge" or "indicia" present in this case is the conversion of the non-exempt funds to exempt funds after a judgment was entered.

In *Ford v. Poston,* 773 F.2d 52 (4th Cir. 1985), the Fourth Circuit upheld the bankruptcy court's determination that the debtor's transfer of property to himself and his wife as tenancy by the entirety one day after a creditor obtained a judgment against him was done with the intent to defraud his creditors. Such a transfer is sufficient indicia of the debtor's intent to hinder or delay a creditor and is sufficient to deny the debtor his discharge.

Marian Davidson testified that she had not discussed with her investment adviser whether the Annuity would be exempt. She gave two reasons for moving the funds to an annuity. First, she needed income on which to live and, second, she feared that Ameritrust might put a hold on her account. This testimony shows that Marian Davidson had a particular creditor in mind when she bought the Annuity with the non-exempt funds. It also shows that she was looking out for her future well-being. In this case, the bright line test set forth in *Oberst* is blurred by Marian Davidson's dual intent.

There can be no balancing of a debtor's purpose. If there is sufficient proof that a debtor transferred assets with the intent to hinder, delay or defraud a creditor, then the discharge will be denied. The Court finds that at the time the funds were converted from a non-exempt account to an exempt annuity, which was the day before the Judgment was entered, Marian Davidson intended to hinder or delay Ameritrust. Therefore, pursuant to Section 727(a)(2) Marian Davidson's discharge is denied.

■ Ameritrust contends that Walter Davidson's discharge should also be denied because Marian Davidson's transfer from the Debtors' Joint Account to the Annuity was made with the participation, assistance and concurrence of Walter Davidson. The Code does not allow attribution of intent from spouse to spouse. *Matter of Reed,* 700 F.2d 986, 993 (5th Cir.1983). A spouse's discharge will not be denied absent evidence that the spouse also intended to hinder or delay a creditor.

The evidence presented as to Walter Davidson's intent was that he talked with L.H. Bayley about different investments for his wife's funds and that he delivered Marian Davidson's check to Bayley for the purchase of the Annuity. The Debtors also testified that the funds were Marian Davidson's and that Walter Davidson had no interest in the funds. The Court finds that the Plaintiffs did not meet their burden of proving that Walter Davidson intended to hinder, delay or defraud Ameritrust. Therefore, Walter Davidson will not be denied his discharge.

2. Denial of discharge pursuant to § 727(a)(4).

■ The Plaintiffs also assert that because the Debtors' omitted from their bankruptcy schedules the sale of jewelry, the transfer of monies to and from a Certificate of Deposit, $1,000 gifts to their son and alleged payments to creditors they should be denied their discharge pursuant to § 727(a)(4). The Debtors were not required to list the sale of the jewelry because the sale took place more

than one year before the bankruptcy was filed. The remaining omissions were not material. Therefore, the Debtors' discharge will not be denied under § 727(a)(4).[1]

3. Denial of discharge pursuant to § 727(a)(5).

■ As the final basis for the Plaintiffs' objection to the Debtors' discharge, the Plaintiffs' contend that the Debtors failed to satisfactorily explain the loss of approximately $30,000. Marian Davidson explained, and the testimony was corroborated by the evidence, that the remaining money was placed in four different accounts. This testimony, and the evidence supporting the testimony, adequately explains the disposition of the $30,000. Therefore, the Debtors will not be denied their discharge under Section 727(a)(5).

## B. OBJECTION TO EXEMPTION

■ Ameritrust also objects to the Debtors' claim of exemption in the Annuity. Pursuant to Bankruptcy Code Section 522(b) and Florida Statute Section 222.20, Florida has opted out of the Federal scheme of exemptions for debtors and has provided broader exemptions to debtors who are residents of the State of Florida. *See also* Fla.Stat. § 222.201. Under Florida Statute Section 222.14, annuities are exempt from attachment, garnishment or legal process. Ameritrust does not contest that the Annuity is exempt under Florida law. Instead, Ameritrust asserts that the Debtors' exemption should be disallowed because the Debtors converted the money in the Joint Account to the Annuity with the intent to hinder, delay or defraud. For support of this argument, Ameritrust cites to *In re Schwarb*, 150 B.R. 470 (Bankr.M.D.Fla.1992) and *In re Coplan*, 156 B.R. 88 (Bankr.M.D.Fla.1993). In those cases, the courts sustained the creditors' objection to exemptions because the debtors had engaged in fraudulent pre-bankruptcy planning.

Although many courts agree that a debtor's exemption may be disallowed if a trustee or creditor proves that the debtor fraudulently converted non-exempt assets to exempt assets on the eve of bankruptcy, this Court does not agree that such relief is afforded under Bankruptcy Code Section 522. Section 522 allows a party in interest to object to exemptions improperly claimed under applicable law. There is nothing within Section 522 that allows a court to deny an exemption on the basis that the property was converted from a non-exempt asset to an exempt asset with the intent to hinder, delay or defraud a creditor.

In *In re Hayes*, 119 B.R. 86 (Bankr. E.D.Va.1990), the court also considered whether a debtor should be denied his exemption because of fraudulent conduct. The court found the debtor's conduct egregious, but concluded that there was no Virginia authority that a debtor forfeits his right to his exemption as a consequence of fraudulent conduct. Consequently, the court held that the denial of the exemption was not a proper remedy but that the proper course of conduct was for the trustee to object to discharge. *Id.* at 89.

The court in *In re Spoor–Weston, Inc.*, 139 B.R. 1009 (Bankr.N.D.Okl.1992), recognized other remedies available to creditors and trustees when a debtor converts non-exempt assets. In that case, the debtors, on the same day the bankruptcy schedules were signed, took money from a management account and paid $21,000 to their bank to reduce the principal on their mortgage. The court stated that the remedies provided by the Bankruptcy Code for the conversion of non-exempt assets was the avoidance of the conversion as a fraudulent transfer under Section 548; the dismissal of the case "for cause" or "substantial abuse" under Section 707; the denial of discharge under Section 727; and the objection to claim of exemption. *Spoor–Weston*, 139 B.R. at 1015. In that case, the trustee and creditor also chose to object to the exemption without seeking to avoid the transfer under Section 548.

---

1. The Court notes that the Plaintiffs failed to ask any questions or present any evidence regarding the $10,000 that was at one time in the Sun Bank savings account. Because the Plaintiffs did not explore this area, the Court can only assume that the omission of this account from the schedules was immaterial.

The court reasoned that Bankruptcy Code Section 105 gives bankruptcy courts the equitable powers to supply any remedy to carry out the provisions of the Code, and to "prevent fraud or injustice and safeguard the public interest." *Id.* The court recognized that—

> Normally, objection to claim of exemption concerns the basic right to or measure of an exemption under the law creating the exemption—in this instance, a matter of State statutory law. But in abnormal circumstances, objection to exemption might concern the abuse of an exemption in the context of a bankruptcy case—a matter purely of bankruptcy law, which encompasses equity.

> \* \* \* \* \* \*

> But of course there must be no casual interference with exemptions prescribed by the legislature; so a strong showing of abuse, sufficient to invoke the court's general equitable powers, must be recognized.

*Id.* at 1015–16. That court found that the debtors' conversion of a sizeable non-exempt asset, not in a "normal" transaction, but on the advice of counsel, for the purpose of removing the property from the reach of creditors, on the day that the bankruptcy petition and schedules were signed, leaving no non-exempt assets available for distribution to creditors was sufficient to deny the exemption, in part, under Section 105.

At the time this case was initiated, there was no Florida law providing that a debtor forfeits her right to an exemption as a consequence for fraudulent conduct.[2] Further, Ameritrust has not sought under Section 548 to avoid the transfer from the Joint Account to the annuity.[3] Finally, because there has been no "strong showing of abuse" by the Debtors the Court will not exercise its equitable powers under Section 105 and deny the Debtors' exemption. Because the annui-

ty is exempt under Florida law, Ameritrust's objection to the exemption will be overruled.

A separate final judgment will be entered in accordance herewith.

---

2. Effective October 1, 1993, Florida Statute Section 222.30 provides that any conversion of nonexempt assets to exempt assets is a fraudulent asset conversion as to the creditor if the debtor made the conversion with the intent to hinder, delay or defraud the creditor. This statute expressly applies to conversions occurring on or after October 1, 1993, thus it is not effective as to the conversion in this case.

3. Again, this Court recognizes, but does not agree with, the decisions from the Middle District of Florida holding that a conversion from nonexempt to exempt is not a "transfer" as defined by the Bankruptcy Code.