In re Carmella CRAIG, Debtor.

United States of America, Plaintiff,

v.

Carmella Craig, Defendant.

Bankruptcy No. 99–23282–BKC–RBR.
Adversary No. 99–2296–BKC–RBR–A.

United States Bankruptcy Court,
S.D. Florida,
Fort Lauderdale Division.

June 26, 2000.

Paul G. Gill, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for United States of America.

Kenneth S. Rappaport, Boca Raton, FL, for debtor.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

RAYMOND B. RAY, Bankruptcy Judge.

This matter came before the Court for hearing on Plaintiff's Motion for Summary Judgment on May 19, 2000. Having reviewed pertinent provisions of the files, both in the main bankruptcy case and this adversary proceeding, and considered arguments of counsel, the Court hereby GRANTS the motion. The grounds for this action are set forth below, and a separate Judgment shall be entered in favor of the United States and against the Defendant–Debtor.

### Procedural History

The Debtor commenced this Chapter 7 case in May 1999 by signing under oath and filing her petition and related schedules and Statement of Financial Affairs (SOFA). The United States commenced this adversary proceeding by Complaint filed in August, 1999. After substantial discovery,[1] the Plaintiff's Motion for Summary Judgment was filed on March 15, 2000, at the same time that Plaintiff filed a Motion in Limine and Motion to Amend Complaint. Leave to amend was granted by order dated May 4, 2000. The hearing on the summary judgment motion was deferred from April 25, 2000 to May 19, 2000 to give the Debtor an opportunity to answer the Amended Complaint.

---

1. Depositions and documents filed with the Court in this adversary and/or the main case include the following: (1) Debtor's Rule 2004 examination; (2) Debtor's deposition on December 17, 1999 ("I Debtor Dep."), and February 4, 2000 ("II Debtor Dep."); (3) Louisiana deposition of accountant Ricky LeBlanc; (4) Massachusetts depositions of accountant Fred Batchelder and Anthony Craig, the latter both individually and as the only designated Rule 30(b)(6) representative of NEU Corp.;

(5) copies of checks from accounts in the name of Anthony Craig, the Debtor's son, and on an account in the name of NEU Corp.; and (6) the February 2, 2000 deposition of Plantation Inn, for which the Debtor was the designated representative. The United States also propounded extensive interrogatories and requests for production, leading to the filing and granting of a Motion to Compel and corresponding sanctions. See C.P. # s 14, 20.

The only documents filed in response to Plaintiff's Motion for Summary Judgment were the following: (1) two different affidavits of attorney George Kelly; (2) the affidavit and amended affidavit of Carmella Craig, which appear to be identical in substance; and (3) a memorandum captioned Response to Plaintiff's Motion for Summary Judgment. Neither in these filings, nor in argument to the Court, has the Debtor urged that the Motion be denied or discovery further continued pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Therefore, as of May 19, 2000, all issues presented by Plaintiff's Motion for Summary Judgment were properly before the Court and the Motion was ripe for decision.

## The Factual Record

### Plaintiff's Statement of Undisputed Facts

Except as addressed below, the Debtor did not controvert Plaintiff's 20–page fact statement which was supported by references to the record. Therefore, Plaintiff's fact statement is adopted by the Court and incorporated by reference herein, except as modified by the following observations.

First, the Court finds that the Plaintiff actually underestimated the number and value of checks written by the Debtor on the accounts of Anthony Craig and NEU Corp. These checks were written for the Debtor's personal benefit, and most of them were written and signed by the Debtor using either her own signature or the name of her son, Anthony Craig. Examining only those checks specifically identifiable as payment on the Debtor's personal American Express Gold Card account, I conclude that more than $46,000.00 was paid on the card from January 1996 through May 1999. More than 110 other checks totaling over $46,000.00 were written from December 1995 to June 1999 for Debtor's personal tax liabilities or bills related to her Florida property. These include checks made out to Florida utility companies, various federal or state taxing authorities, and Plaza East for condominium fees.

Debtor also wrote additional checks for thousands of dollars (i) to pay for other credit card accounts in her name or on which she otherwise has charging privileges; (ii) for cash; (iii) for Debtor's personal or health care; and (iv) for political contributions in Massachusetts.

### Debtor's Response

The affidavits of George Kelly are irrelevant and/or inadmissible, and otherwise fail to raise a genuine issue as to any material fact. The affidavits represent Kelly's testimony as an alleged representative or lawyer for Plantation Inn, NEU Corp., and Anthony Craig. Kelly was never identified as a witness in Debtor's Rule 26(a)(1) Disclosures, which in and of itself warrants excluding his testimony. Kelly did not previously testify on behalf of Plantation Inn or NEU Corp. ("NEU"), and this Court has already barred the introduction of any testimony by those companies or Anthony Craig other than by previously taken deposition. *See* Order Continuing Pretrial Conference and Hearing of Plaintiff's Motion for Summary Judgment, Granting Plaintiff's Motion to Amend Complaint, and Granting in Part and Denying in Part Plaintiff's Motion in Limine (C.P. # 43) at ¶ 2. Debtor's own counsel could identify at oral argument only two paragraphs, numbers 39 and 40, of the 106 paragraph statement of facts in Plaintiff's Motion for Summary Judgment which were supposedly controverted by Kelly's affidavits. Paragraphs 39 and 40 describe the history of discovery by subpoena of Plantation Inn. The accuracy of that history would not affect resolution of Plaintiff's Motion, and Kelly's affidavits do *not* controvert most of what is in those paragraphs. Moreover, Kelly is plainly not a competent witness on several points. He cannot state why Anthony Craig invoked the Fifth Amendment or offer anything other than hearsay as to the actions of his various clients.

The Amended Affidavit of Carmella Craig deserves close examination. As a preliminary matter, the Affidavit fails to controvert the facts asserted in Plaintiff's Motion for Summary Judgment. Among these uncontroverted facts are the following:

1. Although previously swearing she never signed checks on accounts in the name of her son, the Debtor in fact signed hundreds of checks for at least four years, including many for her personal expenses.

2. Debtor was the sole officer of record for NEU when it was formed to acquire the mortgage on her Florida property, and for 11 months thereafter.

3. Although previously denying knowledge of NEU and whether it had a checking account, Debtor wrote almost all of NEU's checks for the company's first 14 months of its existence.

4. NEU was incorporated in Massachusetts in 1997 just before acquiring the mortgage on Debtor's Florida property through negotiations led by Debtor's long-time personal lawyer. Since then, NEU has never attempted to enforce the mortgage. However, it has paid some personal expenses of the Debtor.[2]

5. Debtor has remained in possession of her Massachusetts home after it was purchased by a realty trust representing her sons. Her sons reside elsewhere. She did not move her car to Florida, where she now claims homestead and other Florida exemptions. She has no demonstrable connection to Florida beyond that of a visitor with a condominium located in Florida.

6. The Debtor was in Massachusetts when she wrote the numerous checks admitted into evidence.

Many of the checks were written by the Debtor during 22 of the 26 weeks immediately preceding the Debtor's bankruptcy filing.

7. While attempting to settle her federal tax liability in 1998 for 15 cents on the dollar, Debtor gave the IRS a forged, fraudulent document misrepresenting that an unrelated entity held a mortgage on her Florida condominium. In reality, a Massachusetts corporation acquired the mortgage more than a year earlier, when the Debtor was its sole officer.

The Debtor was deposed on four different days in this case, including her appearance as the only designated Rule 30(b)(6) representative concerning corporate activities for Plantation Inn. Debtor's affidavit contradicts much of her prior sworn testimony and sworn bankruptcy papers.

That the Debtor is now willing to admit that she wrote and signed checks for her benefit from accounts in the name of Anthony Craig and NEU does not change the fact that she previously denied, under oath, ever signing checks on Anthony Craig's account, or even *knowing* that an NEU account existed. Her explanation indicating only "confusion" over "the timetable of events that had occurred more than 3 years prior thereto" lacks creditability. The Debtor wrote checks on accounts belonging to Anthony Craig and NEU throughout 1999, including the week she filed her bankruptcy petition and the week of her Rule 2004 examination.

The Debtor claims for the first time by affidavit that funds used to pay her mortgage were loaned to her by CNA Brothers, Inc. or other entities or persons. However, the Debtor did not identify such loans in her bankruptcy schedules, mention them in prior testimony, or otherwise provide documentation regarding such loans.

**2.** The affidavit denies that Plantation Inn ever paid her personal expenses, but does not address NEU.

While conceding she has hindered the collection attempts of creditors for years by putting her money into her son's checking account, the Debtor claims for the first time by affidavit that "none of the funds in [that] or any other bank account belonged to" her as of the May 14, 1999 petition date. The affidavit offers no explanation for this assertion, which contradicts otherwise uncontested evidence.

Debtor contends by affidavit that her role in Plantation is to insure that her sons' financial decisions are followed. That statement contradicts previous testimony from her and from Plantation's accountant.[3]

Debtor proclaims by affidavit that she turned over checks drawn on Anthony Craig's account to the trustee and produced to the United States all financial documents in her possession. However, the Court finds that the checks were offered only after a Rule 2004 exam procured information that should have been affirmatively disclosed on the bankruptcy schedules. When finally produced, the checks revealed some of Debtor's testimony about the checks to be false.

The Court further finds the Debtor's explanation as to her failure to list her Massachusetts furniture on her bankruptcy schedules to be uncreditable. While the Debtor maintains that the furniture was sold to her children, there is no evidence supporting a finding of such a sale (i.e. a bill of sale or receipt).

In addition, the Debtor's affidavit adds no disputed material fact to the otherwise undisputed record concerning her alleged status as a Florida resident. In fact, her affidavit concedes that all of her routine personal and professional affairs take place now, as always, in Massachusetts or Louisiana, and not Florida. The Debtor's affidavit does not even state that she was physically present in Florida for 180 total days since 1996 or 1997, much less for all or most of the 180 days immediately preceding the filing of her bankruptcy petition.

### Legal Analysis

■■■ A party objecting to a debtor's discharge must satisfy the relevant provisions of § 727 by a preponderance of the evidence. *Furr v. Lordy (In re Lordy)*, 214 B.R. 650, 664 (Bankr.S.D.Fla.1997); *Stone v. Bosse (In re Stone)*, 200 B.R. 419, 421 (Bankr.S.D.Fla.1996). Once evidence sufficient to sustain the objection is presented, the burden shifts to the debtor to explain why the discharge should nevertheless be granted. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984); *Dulbina of Am., Ltd. v. Sklarin (In re Sklarin)*, 69 B.R. 949, 952 (Bankr. S.D.Fla.1987).

The Plaintiff objects to the Debtor's discharge pursuant to § 727(a)(2), (3), (4) and (5). The Court will consider each in turn below.

### A. Debtor transferred and concealed property within a year preceding her bankruptcy petition.

Pursuant to § 727(a)(2)(A), a discharge shall be denied a debtor who, with intent to hinder, delay, or defraud a creditor, transfers, removes, conceals, or permits to be transferred, removed, or concealed, property of the debtor within one year before the date of the filing of the bankruptcy petition.

■■■ For the purposes of this section, Congress intended that the deposit of funds in a bank account would constitute a transfer. *Ameritrust Nat'l Bank v. Davidson (In re Davidson)*, 164 B.R. 782, 785 (Bankr.S.D.Fla.1994), *aff'd in relevant part*, 178 B.R. 544 (S.D.Fla.1995). In addition, failure to disclose a bank account in which the debtor deposits funds consti-

---

3. Debtor has always made the critical financial decisions for the company, both before and since she supposedly sold all interest in the company in 1996, and nobody has disagreed with those decisions. *See, e.g.,* Plantation Dep. of 2/2/00 at 30–34; Dep. of Ricky LeBlanc at 16–22, 44–45.

tutes concealment. *Groupe v. Braun (In re Braun)*, 98 B.R. 382, 385 (Bankr.N.D.Ill. 1989). Subjective fraudulent intent is not necessary; the mere intent to hinder or delay is sufficient. *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 731–32 (9th Cir. BAP 1999); *Davidson*, 164 B.R. at 785.

■ In this case, the Debtor failed to disclose on her schedules any interest in bank accounts. Later, she admitted that she started putting money in accounts of her son several years ago. She admitted that she started doing this at least in part because the IRS and another creditor had seized bank accounts in her own name.

Finding that the Debtor's actions constitute a concealment of assets and a transfer of property with intent to hinder or delay creditors, the Court determines that the requirements of § 727(a)(4)(A) are met, and the Debtor's discharge shall be denied.

## B. Debtor concealed, destroyed, falsified or failed to keep or preserve adequate recorded information from which her financial condition or business transactions might be ascertained.

Section 727(a)(3) provides for a denial of discharge when a debtor

> has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. . . .

■ " 'The purpose of this provision is to ensure that the trustee and creditors receive sufficient information to trace a debtor's financial history for a reasonable period past to present.' " *Furr v. Lordy*, 214 B.R. at 665 (quoting *In re Trogdon*, 111 B.R. 655, 658 (Bankr.N.D.Ohio 1990)). The debtor has an affirmative duty to provide such documents, and the trustee and

creditors "are not required to ferret out" the required records. *Govaert v. Southern Nat'l Bank of N.C. (In re Caserta)*, 182 B.R. 599, 611 (Bankr.S.D.Fla.1995).

■ Having reviewed the facts of this case, the Court finds that the Debtor failed to produce any credit card statements or credit card or loan applications requested in discovery, or any financial data requested of companies of which she was a substantial shareholder. The Debtor referred by affidavit to additional loans and obligations she supposedly had, as personal guarantor of loans to Plantation Inn or recipient of "loans" from the entity she incorporated, CNA Brothers Inc., without providing documentation of those obligations.

The documentation that was provided through discovery does not support the Debtor's testimony or schedules that NEU Corp. holds a secured claim in the amount of $95,764.13, or that the Debtor paid money to NEU on account of a debt to NEU. Nor has the Debtor provided documentation as to what bills were paid by CNA Brothers Associates with the $75,000.00 to which the Debtor was entitled during the 10 months beginning March 1996.

In sum, the Court finds that the Debtor failed to provide the Trustee and creditors sufficient documentation from which her financial condition or business transactions can be determined. Accordingly, her discharge shall be denied.

## C. Debtor made false and fraudulent oaths and claims.

A knowingly false oath or account made with intent to defraud will sustain a discharge objection under 11 U.S.C. § 727(a)(4)(A). So too will the Debtor's knowing, fraudulent presentation of a false claim. 11 U.S.C. § 727(a)(4)(B).

■ The purpose of § 727(a)(4)(A) is to assure "that adequate information is available to those interested in administration of the estate without the need of

examinations or investigations to determine whether the information provided is true." *Armento v. Armento (In re Armento)*, 127 B.R. 486, 490–91 (Bankr. S.D.Fla.1991) (emphasis added); *accord Friedman v. Sofro (In re Sofro)*, 110 B.R. 989, 991–92 (Bankr.S.D.Fla.1990). A debtor thus has "a paramount duty to consider all questions posed on a statement or schedule carefully and see that the question is answered completely in all respects." *Sofro*, 110 B.R. at 991.

 The Debtor has made many material, false statements in connection with this case. She ignored her "paramount duty" to carefully consider her schedules and SOFA, by first failing to disclose any bank account interests, then admitting bank deposits and signature authority, but still denying the use of such authority for her own benefit. She also denied knowledge of or interest in the activities of NEU, claiming that all questions should be posed to her son, Anthony.

Documents finally produced by Debtor reveal that she has written and/or signed most of the checks on two accounts purportedly belonging to her son, and done the same for the account of NEU, including many checks that were used to pay her own personal expenses in amounts far exceeding her reported income.

Although the Debtor claimed to have a reduced role in the affairs of Plantation Inn since 1996, she was designated the Rule 30(b)(6) witness for the company on matters clearly pertaining to corporate activities since 1996. She has continued to receive all financial statements regarding Plantation Inn, remained the company accountant's chief contact, and she acknowledged that she is the one who "knows the business." She continues to examine corporate books regularly to determine what the company will pay in rent and what it will pay in distributions. Those determinations have from 1996–1999 sent over $1.9 million in rent and distributions from Plantation to Anthony Craig and NEU, plus another third of this sum to Raymond

Suse, her friend. As stated above, both Anthony Craig and NEU have accounts on which the Debtor has written checks to pay for her own personal bills, in amounts far exceeding her reported income.

 Through her sworn bankruptcy schedules, Debtor also claims Florida as her domicile for the majority of the 180 days preceding her bankruptcy petition. A person's domicile is established by physical presence in a place combined with a specific state of mind concerning one's intent to remain there. *Furr v. Lordy*, 214 B.R. at 662. "A change in domicile requires physical presence at the new location along with an intention to remain there indefinitely or the absence of any intention to go elsewhere." *Id.* Factors relevant to the determination of a person's domicile include current residence, voting registration and practices, location of spouse and family, location of personal and real property, location of brokerage and bank accounts, memberships in churches, clubs, and other organizations, location of the person's doctors, dentist, accountant and lawyers, place of employment or business, driver's license and automobile registration, and payment of taxes. *Id.*

The instant debtor has never (i) garaged her car in Florida; (ii) voted or registered to vote in Florida; (iii) held a job in Florida; (iv) had any Florida bank account for the last 10 years; (v) joined any Florida clubs, churches, or organizations; or (vi) had a cellular phone with a Florida area code.

By contrast, the Debtor still maintains her long-time home in Massachusetts, which was acquired through a nominee trust by her sons (who do not reside in the home). She keeps her car, still bearing Massachusetts registration and plates, on the driveway of that property. She keeps clothing, personal effects, and furniture there on a permanent basis. Debtor's accountant, physicians, dentist, pharmacist, hair stylist, manicurist, tailor, and dry cleaner are all in Massachusetts. She uses

their services regularly, and has been doing so continuously for years. The Debtor continues to have a Massachusetts-based cellular phone, and makes contributions to Massachusetts politicians.

Even if Debtor intended to make Florida her home in 1996 or 1997 and initially moved here at that time, by her own admission she moved back to Massachusetts after three months. On this evidence, a reasonable fact finder could not conclude that the Debtor established a Florida domicile on or before 91 days preceding her bankruptcy petition.

Finally, the undisputed facts establish the NEU mortgage claim to be false or seriously inflated. Neither the Debtor nor NEU has produced documents to justify the Debtor's contention that NEU has a secured claim exceeding $95,000.00. NEU's own tax returns do not reflect any mortgage, but rather an unchanging note payable balance from the Debtor in an amount significantly less than the alleged mortgage. In fact, the evidence does not even support a finding of a legitimate debtor-creditor relationship between the Debtor and NEU.

For the reasons set forth above, the Debtor's discharge shall be denied under the provisions of § 727(a)(4).

### D. The Debtor failed to satisfactorily explain the loss of assets.

Lastly, the Plaintiff objects to the Debtor's discharge pursuant to § 727(a)(5) which provides for a denial of a debtor's discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities...."

■■■■ To succeed in obtaining a denial of discharge under this section, the movant must show that the debtor once owned substantial identifiable assets that are no longer available for distribution to creditors. *ITT Commercial Finance Corp. v. Walz (In re Walz)*, 115 B.R. 353, 357 (Bankr.N.D.Fla.1990) (citing, *In re Sklarin*, 69 B.R. 949 (Bankr.S.D.Fla.1987)). Once the movant demonstrates a loss of assets, the burden shifts to the debtor to explain what happened to the assets. *Id.* "A satisfactory explanation requires the debtor to demonstrate good faith in the conduct of his affairs and in explaining the loss of assets." *Id.* at 357 (citing, *In re Cohen*, 47 B.R. 871 (Bankr.S.D.Fla.1985)).

■■■■ Debtor avers she sold all her interest in Plantation Inn, Inc. to CNA Brothers Associates in March 1996 for $25,000.00 cash and a $50,000.00 note that was fully paid off within 10 months, either in cash or by the purchaser directly paying obligations of the Debtor. The Debtor cannot explain what became of the cash, nor can she identify what bills were paid, either with the cash or directly by CNA. A year after filing her petition for bankruptcy, and more than six months after document demands from the Chapter 7 trustee and the United States, she has failed to provide documentation of the payments, or to identify any witnesses to help her in this regard. To the extent her son, Anthony Craig, may shed any light on this matter, he refuses to testify about anything concerning her mother or her business or financial interests for fear of criminal prosecution.

Debtor's vague and self-serving statements lack corroboration and are in some respects simply contradicted by other evidence and documents. As a matter of law, Debtor has failed to satisfactorily explain what happened to the $75,000.00. The objection to discharge should be sustained and discharge denied under 11 U.S.C. § 727(a)(5)

### *Conclusion*

For the reasons set forth above, the objection to discharge is sustained. A separate judgment shall issue forthwith.