In re Leslie D. BARKER, and Elnora G. Barker, Debtors.

Gregory K. CREWS, Trustee for the estate of Leslie D. Barker, and Elnora G. Barker, Plaintiff.

v.

FIRST COLONY LIFE INSURANCE COMPANY, and Leslie D. Barker, Defendants.

Bankruptcy No. 92–6302–BKC–3F7. Adv. No. 93–127, 93–128.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

June 3, 1994.

Robert Altman, for trustee.

John Moxley, for Leslie D. Barker.

## OPINION

JERRY A. FUNK, Bankruptcy Judge.

This case and these proceedings are before the Court on Plaintiff's complaint filed on February 2, 1993, seeking to avoid a fraudulent transfer and to recover transferred property of the estate and objecting to debtor's discharge. *See* 11 U.S.C. §§ 548, 727. Similarly, these two adversary proceedings are related to another matter filed by Plaintiff in the main case objecting to Debtor's claim of exemption. Essentially, Plaintiff objects to Debtor's claimed exemption because non-exempt funds were converted into an annuity held by Defendant First Colony Life Insurance Company for the purpose of hindering, delaying or defrauding creditors. As such, Plaintiff contends that Defendant Leslie Barker should not profit from his attempt to shield the annuity and therefore is not entitled to a discharge.

The Court conducted a hearing on the matter on March 29, 1994, to consider the argument of counsel and to obtain evidence, and upon review of the evidence and memoranda filed by the parties, enters the following findings of fact and conclusions of law. Fed.R.Bankr.P. 7052. This Court has jurisdiction over these adversary proceedings pursuant to 28 U.S.C. § 1334.

### A. FINDINGS OF FACT

Defendant Debtors are an elderly couple, both of whom are over the age of seventy-

five years. Mrs. Barker is unemployed and receives social security. Mr. Barker likewise receives social security but earns additional money operating a part-time clock repair business from his home. Most of Mrs. Barker's social security monies are spent on medication. The Debtors filed bankruptcy on November 10, 1992, pursuant to Chapter 7 shortly after being sued in state court.

On October 16, 1992, the Defendants were sued by Sun Bank in a state action, seeking a deficiency judgment as a result of the voluntary repossession of a mobile home owned by the Debtors a year earlier. Defendant's Exhibit 6. The Defendants visited an attorney who referred them to a bankruptcy attorney. After consulting with their bankruptcy attorney on October 23, 1992, the Defendants contacted their Merrill Lynch brokerage and sold certain stock through three separate transactions. Defendants received $15,042.34 from the sale of stock before subtracting charges and fees.

Then, on October 27, 1992, Defendants received a guaranteed income quote from Defendant First Colony Life Insurance Company, regarding annuity benefits. Believing this annuity to be a sound investment, Leslie Barker purchased an annuity from First Colony Life Insurance Company in the amount of $14,007.00. Five days later the Barkers filed a petition for relief pursuant to Chapter 7.

Defendant First Colony Life Insurance Company is a stakeholder in this adversary proceeding and presently retains the annuity funds which are the subject of this litigation.

## B. CONCLUSIONS OF LAW

### 1. EXEMPTION

The Trustee objects to Debtor's claim of exemption in stock proceeds converted to an exempt annuity, which conversion occurred just prior to filing bankruptcy. Upon filing bankruptcy, all property belonging to a debtor becomes property of the estate. 11 U.S.C. § 541. Nonetheless section 522 of the Bankruptcy Code allows a debtor to retain assets which are exempt from the bankruptcy estate. In relevant part, the Bankruptcy Code provides:

### § 522. Exemptions.

.  .  .  .  .

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.

.  .  .  .  .

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as tenant by the entirety or joint tenant is exempt from process under applicable non-bankruptcy law.

11 U.S.C. § 522.

■ While the Code allows a debtor to choose between exemptions, Florida citizens are not entitled to the federal exemptions listed in paragraph (d). Instead, a Florida citizen is entitled to only those exemptions allowed by state law, which exemptions are enumerated in the Florida Constitution (Article X, section IV) and the Florida Statutes (Fla.Stat.Ann. § 222.201). As this Court stated previously in *In re Collins,* 19 B.R. 874, 876 (Bankr.M.D.Fla.1982), a head of household can qualify for the following exemptions:

a. Homestead of unlimited value

b. Personal property of $1,000

c. Wages

d. Cash surrender value of life insurance and annuity policies.

The exemption at issue in this case is an annuity, which is recognized by Florida as valid. Although it is valid, the Trustee contends that the exemption should be disallowed because Debtor Leslie Barker *converted* the proceeds from selling certain stock to an annuity with the intent to hinder, delay or defraud creditors.

■ Section 522 of the Bankruptcy Code provides little guidance since it fails either to mention conversion or the result of a pre-bankruptcy conversion. The legislative history, contrary to the Code, provides some insight concerning conversion, but it is incomplete and provides merely a starting point for the Court's analysis. Prior to revising the Bankruptcy Code in 1978, the House and Senate Reports specifically addressed such conversion:

> As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

*In re Smiley*, 864 F.2d 562, 566 (7th Cir. 1989) (citations omitted). As reflected in the legislative history, conversion of assets from non-exempt to exempt within the year preceding a petition for bankruptcy is permitted. Conversion permits a debtor to make full use of the exemptions to which a debtor is entitled. *In re Decker*, 105 B.R. 79, 83 (Bankr. M.D.Fla.1989). Although permitted, courts considering the correctness of a pre-bankruptcy conversion of funds to create a valid exemption have followed two different approaches.

There is well-established precedent, as Plaintiff suggests, to deny a claimed exemption which is valid under state law. One such approach adhered to by courts in this district has been to deny the *exemption* upon finding an intent to hinder, delay, or defraud creditors in the *establishment* of the exemption. *In re Mackey*, 158 B.R. 509, 512 (Bankr. M.D.Fla.1993); *In re Collins*, 19 B.R. 874 (Bankr.M.D.Fla.1982). This approach requires the Court to consider the evidence and make inferences that demonstrate, at least in part, that a debtor possessed such intent. In many cases, a debtor may have a mixed motive for making the transfer; a debtor may genuinely desire to purchase a new home while also intending to shield the home from creditors. *In re Trinity Baptist Church*, 25 B.R. 529–33 (Bankr.M.D.Fla. 1983); *accord In re Ford*, 53 B.R. 444, 450 (W.D.Wis.1981), *aff'd sub. nom. Ford v. Poston*, 773 F.2d 52 (4th Cir.1985). *See generally* Resnick, *Prudent Planning or Fraudulent Transfer? The Use of Nonexempt Assets to Purchase or Improve Exempt Property on the Eve of Bankruptcy*, 31 Rutgers L.Rev. 615 (1978).

A second approach, which the Court adopts today, rejects the notion that the Bankruptcy Code permits an exemption—otherwise valid under state law—to be disallowed. The Code lacks any such language that would permit disallowance even if the asset were converted with the intent to hinder, delay or defraud a creditor. *In re Davidson*, 164 B.R. 782, 787 (Bankr.S.D.Fla. 1994); *accord In re Hayes*, 119 B.R. 86 (Bankr.E.D.Va.1990). This approach is preferable because it allows a debtor to explore possible exemptions while also preserving a creditor's rights. If a creditor believes that an exemption has been obtained to shield assets, a creditor has other *expressly* applicable Code remedies.

As the court recognized in *In re Spoor-Weston, Inc.*, 139 B.R. 1009 (Bankr.N.D.Okla. 1992), there are other remedies available to a creditor. Some of the remedies available to creditors or trustees include: (1) avoiding the transfer under § 548; (2) dismissing the case "for cause" or "substantial abuse" under § 707; or (3) denying the discharge altogether under § 727. In addition, Florida law provides a state law remedy effective on October 1, 1993, for conversion of non-exempt assets to exempt assets where the conversion is performed with the intent to hinder, delay or defraud a creditor. *See* Fla. Stat.Ann. § 222.30 (West 1993).

In light of these remedies, the Court rejects the approach taken previously by the court in *In re Schwarb*, 150 B.R. 470 (Bankr.

M.D.Fla.1992) and *In re Coplan,* 156 B.R. 88 (Bankr.M.D.Fla.1993),[1] and finds that the exemption is valid under Florida law entitling the Debtor to claim the exemption. The Trustee's objection to the exemption is, therefore, overruled.

## 2. FRAUDULENT TRANSFER

The Trustee contends that Defendant transferred the proceeds of the sale of stock into an exempt annuity within one year prior to filing bankruptcy. Factually, there is no dispute that a transfer occurred five days prior to filing Chapter 7. Transcript at 34–35. Yet during trial the parties provided differing accounts of the Debtor's intention when making the transfer. The Trustee contends that the transfer was made to hinder, delay, or defraud creditors and for that reason should be avoided.

The Bankruptcy Code allows a trustee to avoid a pre-petition transfer of a debtor's assets if the transfer was made with actual intent to hinder, delay or defraud a creditor. In pertinent part, § 548 provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, ... that was made ... on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made..., indebted;

11 U.S.C. § 548.

■ The intent to hinder, delay, or defraud creditors may be inferred from extrinsic evidence. There are various factors or indicia of fraud that a court may consider when determining if the transfer is fraudulent. Such signs include: (1) the objecting creditor had a "special equity" in the property converted; (2) the debtor and the transferee maintained a close relationship; (3) the debtor's possession, benefit, or use of the property; (4) the debtor engaged in a "sharp practice" of dealing prior to filing bankruptcy; (5) the debtor became insolvent as a result of the transfers; (6) the conversion occurred after the entry of a judgment; and (7) the debtor received inadequate consideration. *In re Oberst,* 91 B.R. 97, 101 (Bankr. C.D.Cal.1988); *accord In re Smiley,* 864 F.2d at 567.

The evidence presented at trial demonstrates that the Defendant intended to shield his retirement savings from creditors upon converting the stock proceeds into an annuity. Leslie Barker testified during trial about the transfer:

Q: Do you recall Mr. Crews asking you any questions about when you decided to go into an annuity?

A: I don't recall him asking when. I do recall that he asked me why we went into the annuity. I told him it was a desperate attempt to save the last of our savings.

Q: And that that was for your retirement?

A: Yes. That's the only income we had besides social security.

Q: Did you have any other type of assets that would really contribute to sustaining you in your retirement years?

A: No.

On cross-examination, Leslie Barker restated his intention for transferring the stock proceeds into an annuity. When asked whether it was his intention to guarantee his income for the future, Leslie Barker answered that it was, but he knew the annuity was subject to being avoided. Transcript at 33–34. Also, Leslie Barker converted the proceeds but only after first being sued by Sun Bank. The proceeds from the sale of stock were transferred into an annuity at the end of October 1992. Barker filed bankruptcy the following month. Transcript at 18–19.

The only evidence to controvert this compelling documentary evidence is Leslie Bark-

---

1. This is not to say that a party may not object to an exemption. If the objecting party contends that a claimed exemption itself is improper, as in the case of a party claiming entitlement to a homestead exemption and the party alleges that the property is not the debtor's residence, then the objection is proper. If the objecting party contends, on the other hand, that the exemption is invalid due to a fraudulent conveyance, then the objection must be lodged as an adversary proceeding.

er's testimony that in September 1992 he contacted his stockbroker Mr. Degrott, and ostensibly told him to convert the stock proceeds into an annuity, which was prior either to consulting with an attorney or filing bankruptcy. According to Barker, the original $15,000.00 investment began to decline in value. Barker discussed the problem with Degrott, who recommended that he invest in an annuity. Barker knew the annuity was vulnerable, but decided to transfer the money because it was a wise investment. Transcript at 17–18.

While the Court finds Barker's testimony to be credible, the Court finds that his testimony is self-serving and that he intended to defraud creditors. *In re Wines*, 997 F.2d 852, 856 (11th Cir.1993). Clearly, Barker was concerned about an investment in stocks that was losing money, with losses in the amount of $1,400.00. Nevertheless he waited several months until Sun Bank first sued him to transfer the proceeds from stocks to an annuity. Barker explains this delay as primarily due to the timelag in preparing the paperwork. Transcript at 31–32. While this explanation is plausible, the Court is not persuaded that this was the sole motive.

Indeed, the Court does not doubt that Barker had a legitimate reason, at least in part, for transferring the stock proceeds to an annuity. This apparent financial reason was not, however, the sole reason for the transfer; there was an additional reason as well. The evidence presented at trial demonstrates that Barker converted the stock proceeds into an exempt annuity. Although Barker testified that the transfer was "open and above board (sic)," Barker did not list the *transfer* in the bankruptcy schedules. Instead, he listed the annuity as being exempt. If Barker truly believed that the transfer was proper, he would have openly acknowledged the transfer by listing it on the schedule. The Court finds that Barker sought to protect his retirement from creditors while simultaneously obtaining the benefit of a "fresh start."

Even assuming Leslie Barker did not formulate actual intent to defraud creditors, the Court would still find the transfer violative of

§ 548 since there was actual evidence of intent to hinder or delay creditors. The evidence demonstrates that Barker was truthful and candid with creditors when asked about the annuity. Gregory Crews testified that on December 8, 1992, he spoke with Leslie Barker about "the annuity, when it was purchased, and why it was purchased." Transcript at 10. To be sure, Barker did not attempt to hide or conceal the transaction when asked by the Trustee or, to the Court's knowledge, any other creditors.

Nonetheless it is a reasonable inference to draw from his conduct that he intended to "hinder" or "delay" creditors. There is little legislative or judicial guidance on how to determine what actions fall within "intent" either to "hinder" or "delay." While the courts have had on occasion an opportunity to define "hinder" and "delay," the courts have usually bypassed any precise definition, only to conclude that a debtor's actions hindered or delayed creditors. When the Fifth Circuit considered this issue, the court began its analysis by recognizing that the term "defraud" does not subsume "hinder or delay" and ended its analysis there. *In re Bowyer*, 916 F.2d 1056, 1059 (5th Cir.1990); *accord In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir.1986). The Fifth Circuit adopted as its test the "pig to hog" paradigm, which defines—although without clarity—the words "hinder" or "delay" as being analogous to " 'when a pig becomes a hog it is slaughtered.' " *In re Bowyer*, 916 F.2d at 1060. Although this test is insightful, it is of little assistance to an attorney or a court. So, too, the Seventh Circuit distinguishes between fraud and actions that "hinder" or "delay," but the Court failed to announce a test or definition, presumably because the facts were clear. *In re Smiley*, 864 F.2d 562, 568 (7th Cir.1989).

In a recent opinion from the Southern District of Florida, the Bankruptcy Court separated the various terms, but then adopted the usual test applied in cases of fraud. In *In re Davidson*, 164 B.R. 782, 787 (Bankr.S.D.Fla.1994), the court surveyed the "badges" or "indicia" of fraud, finding that at least one badge applied—the conversion of non-exempt funds to exempt—and concluded

that such a transfer was sufficient indicia of *fraud* to conclude that the debtor intended to hinder or delay creditors.

Hence the Court begins its analysis by construing the plain language of the Bankruptcy Code. Rules of statutory construction require a court to interpret a statute in a manner which will "give effect, if possible, to every word Congress used." *Boureslan v. Aramco, Abrian American Oil Co.*, 892 F.2d 1271, 1275 (5th Cir.1990). Fraud as commonly used means an intentional deception that results in injury to another. Fraud typically includes a misrepresentation or concealment of a material fact, which includes conduct. The case law provides an exhaustive account of such factors that should be considered when determining the existence of fraud. *See, e.g., In re Oberst*, 91 B.R. 97, 101 (Bankr.C.D.Cal.1988).

Unlike the aforementioned definition of fraud, "hinder" requires an action that impedes or obstructs a creditor. For example, a debtor may have a sick mother that lives in California. Believing that her mother will die, a debtor travels routinely from Jacksonville to California to attend to her mother's affairs. The debtor's affairs are neglected in the process. Although the debtor neglects her own affairs, she intends months before to transfer funds from a stock to an annuity. Yet she waits until being sued and after consulting with a bankruptcy attorney to make the transfer. The transfer occurs one day prior to filing a bankruptcy petition.

Upon filing bankruptcy, the hypothetical debtor lists the annuity as an exempt asset and discloses the untimely transfer. In fact, at the meeting of creditors she volunteers the information, including all records, names, and dates surrounding the transfer. Based on these facts, it is difficult to conclude that any court would find fraudulent intent. *See In re Schwingler*, 15 B.R. 291, 294–95 (W.D.Wis.1981) (holding that at least a part of the debtor's motivation was to keep assets away from the creditors). Although part of her motivation when transferring the assets was to shield them from creditors, she had a "good faith" belief that she was entitled to the exemption under state law and candidly informed creditors of her actions. Should the exemption be challenged, the debtor could believe that she has a valid defense. Should this debtor's transfer be avoided under the Code? The Court is inclined to believe she is entitled to the exemption.

This seemingly hypertechnical distinction is of great importance to both attorneys and debtors alike. During pre-bankruptcy planning, which is an important part of bankruptcy law, a debtor must decide with his attorney whether to claim an exemption. A particular exemption may be somewhat unclear, as exemplified by the Court's hypothetical debtor. While the exemption is unclear, the consequences of pursing that exemption can be severe indeed. Our hypothetical debtor is faced with two equally unpleasant choices: she either forgoes an exemption entirely or transfers the assets and claims the exemption on the schedules, and then later has the conveyance avoided and the discharge denied. This unseemly result is far from being hypertechnical.

Returning again to our hypothetical debtor, it is clear that any transfer—whether it is fraudulent or not—hinders or delays (i.e., temporarily suspends) certain property from becoming property of the estate. Once a debtor moves property beyond the Trustee's reach, the Trustee must take some type of legal action to recover the property. Such action to recover the estate property does not come without additional cost, which diminishes the overall funds available to creditors. Although most transfers will have the effect of hindering or delaying, the Bankruptcy Code's plain meaning refers to an *intent* to hinder or delay, and not merely an action that has such an *effect*. So, in our example, our fictitious debtor *does not* demonstrate any indicia of fraud, but has hindered or delayed creditors.[2] Thus, the inquiry must focus on whether she formulated the requisite *intent* to hinder or delay creditors. If not, the transfer is proper.

---

2. The converse is also true. It does not matter, in fact, whether a creditor is actually hindered; it is the debtor's intent at the moment of transfer that is significant. Thus, a debtor may intend to hinder collection, and although creditors are not delayed, the transfer may be avoided.

The Court must determine, then, if the debtor here—similar to the hypothetical debtor—has formulated the specific intent to hinder or delay creditors. As with fraud, the debtor's subjective intent is not relevant to the inquiry, but instead the Court should consider extrinsic evidence. Although providing a laundry list of such evidence is impossible, such evidence may include transferring funds to an annuity because a debtor fears that a bank might put a hold on her account. *In re Davidson,* 164 B.R. at 786. In addition, it may include evidence that a debtor intended to delay creditors until he could establish a Kansas residency, file bankruptcy, and avail himself of Kansas' exemptions. *In re Smiley,* 864 F.2d at 568.

Based on the facts in this case, the Court concludes that Leslie Barker transferred the stock proceeds into an annuity with the *intent* to hinder or delay creditors. Barker transferred the stock proceeds and listed the annuity on the schedule, but he failed to also record the transfer itself. By failing to record the transfer, Barker gambled that creditors would not inquire into the *timing* of the transfer or desire to file a separate action to recover the monies—which would entitle Barker to retain the annuity. This type of cat-and-mouse pre-bankruptcy planning hinders and delays all creditors involved and is clearly prohibited by the Code.

### 3. OBJECTION TO DISCHARGE

Plaintiff objects to Debtor's discharge because Leslie Barker transferred the funds into an annuity with the intent to hinder, delay, or defraud a creditor or an officer of the estate.[3]

The Bankruptcy Code provides in relevant part:

**Discharge.**

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of

property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

11 U.S.C. § 727.

Based on the Court's findings *supra,* that the Debtor transferred the funds into an annuity with the intent to hinder, delay, or defraud creditors, the Court must also find that Leslie Barker's discharge must be denied. *Cohen v. Bucci,* 103 B.R. 927 (N.D.Ill. 1989) (stating that the intent required under § 548 is the same intent required by § 727(a)(2)(A).

Accordingly, it is **ORDERED AND AD-JUDGED** that:

1. The Trustee's Objection to the Debtor's Claim of Exemption shall be **OVER-RULED.**

2. The relief requested by the Trustee in the Complaint Seeking to Avoid a Fraudulent Transfer pursuant to § 548 filed in Case No. 93–128 shall be **GRANTED.**

3. The relief requested by the Trustee in the Complaint Seeking to Deny Debtor's Discharge Pursuant to 11 U.S.C. § 727 filed in Case No. 93–127 shall be **GRANTED** except as to Elnora Barker.

4. A separate order and final judgments shall be entered consistent with these findings.

**DONE AND ORDERED.**

---

**3.** Although Elnora Barker was not named as a Defendant in either adversary proceeding, the Court makes the following finding to clarify its holding regarding the discharge. As such, there was no evidence presented during trial—either documentary or testimonial—that Elnora Barker participated in the purchase of the annuity. As such, the Court does not find that she formulated the intent to hinder, delay, or defraud creditors.