**In re Jimmy Delwyn CLEMENTS,
Debtor.**

**Bankruptcy No. 94–3779–BKC–3F7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 18, 1996.

Earl Barker, Jacksonville, Florida, for Debtor.

David Ferebee, Jacksonville, Florida, for Locomotion Properties, Inc.

Alexander Smith, Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case is before the Court upon an Objection to Debtor's Claim of Exemptions

filed by Locomotion Properties, Ltd. (hereinafter "Locomotion"), a creditor of Debtor and a Motion to Continue and Consolidate Hearing on Objection to Exemptions also filed by Locomotion. A hearing was held on February 8, 1996 and the parties subsequently submitted Memorandums of Law to the Court. Based upon the hearing and the Memorandums and evidence previously presented in this case, the Court makes the following Findings of Fact and Conclusions of Law.

This is yet another chapter in what has become the continuing saga of the Clements' bankruptcy case. This case was originally filed under Chapter 13 of the bankruptcy code on September 2, 1994 by Jim and Nell Clements. Locomotion promptly filed a Motion for Relief from Stay in order to continue state court litigation it had pending against the Debtor. After a hotly contested hearing, the Court denied the Motion for Relief from Stay. (See Findings of Fact and Conclusions of Law and Order at Doc. Nos. 30 and 31.) The Debtors then filed an Objection to the Claim of Locomotion. After a hotly contested hearing, the Court allowed the claim of Locomotion in the amount of $239,596.48 as an unsecured claim. (See 185 B.R. 895). Locomotion then objected to confirmation of the Debtors' Chapter 13 Plan. After a hotly contested confirmation hearing, the Court denied confirmation of the Debtors' Plan. (See 185 B.R. 903). Shortly thereafter Mrs. Clements died, and upon motion and after notice and hearing, was dismissed from the case. The case was then voluntarily converted to one under Chapter 7.

Locomotion has now filed an adversary proceeding against Mr. Clements, objecting to the discharge of the Debtor. This chapter of the Clements' bankruptcy case concerns the Objection to Claim of Exemptions filed by Locomotion in the main case, objecting to Debtor's claim of exemption for his homestead. The next chapter in the saga will probably deal with the Objection to Discharge in the adversary. Trial is currently set for July 30, 1996.

The specific issue in the current chapter of this case concerns the Debtor's claim of exemption for his homestead in Jacksonville.[1] Locomotion has filed an Objection to the exemption based upon the allegation that Debtor's homestead was acquired with non-exempt assets, with an intent to defraud Locomotion, and that the knowing conversion of non-exempt properties for the purpose of acquiring exempt assets was fraudulent as to Locomotion. Locomotion has also filed a Motion to Continue and Consolidate the Objection with the trial in its adversary proceeding objecting to the discharge of the Debtor, stating that it feels a full evidentiary trial is merited by the Objection and that the evidence that will be presented in the adversary is very similar to that of the Objection. Debtor opposes the Motion to Continue and Consolidate.

The facts regarding the Objection are few and were stipulated to at the hearing. Debtor was a life-long resident of the state of Alabama until approximately September, 1993, at which time Debtor, and his now deceased wife, moved to Jacksonville, Florida. Debtor and Mrs. Clements sold their home in Alabama and used the proceeds to purchase their home in Jacksonville. Approximately one year later, Debtor filed this bankruptcy case with this Florida court.

It is not disputed by either party that the property in Jacksonville is Debtor's homestead. He has been a full-time resident of Jacksonville since his move to Florida in 1993. Locomotion contends that the motivation for Debtor's move to Florida was to take advantage of Florida's liberal homestead exemption for debtors. It argues that the sale of Debtor's home in Alabama, which has only a limited homestead exemption, and the purchase of the home in Florida, with its unlimited homestead exemption, was the conversion of non-exempt to exempt assets, made with the intent to hinder, delay and defraud creditors, specifically Locomotion. Locomotion argues that this is a basis to not allow Debtor to claim an exemption for his home-

1. For the background of the relationship between this Debtor and creditor, see 185 B.R. 895 and 185 B.R. 903.

stead. These are the pertinent facts for the issue at bar.

## CONCLUSIONS OF LAW

 Florida grants its debtors a liberal exemption for homestead property in its state Constitution at Article X, § 4 which states,

> There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvements or repair thereof, or obligations contracted for house, field or other labor performed on the realty,....

In other words, homesteads in Florida may not be used to satisfy court judgments except in three specifically enumerated instances: (1) unpaid property taxes for the homestead itself, (2) mortgages for the purchase or improvement of the homestead itself, or (3) mechanic's liens for work performed on the homestead. These are the only three instances in which a homestead may be used to satisfy a debt. In a widely cited case, the Florida Supreme Court held that this provision prohibited civil or criminal forfeiture of the homestead because it was not a specifically enumerated exception to the homestead exemption in the Constitution. *Butterworth v. Caggiano,* 605 So.2d 56 (Fla.1992). "Under the rule *"expressio unius est exclusio alterious"*—the expression of one thing is the exclusion of another—forfeitures are not excluded from the homestead exemption because they are not mentioned, either expressly or by reasonable implication, in the three exceptions that are expressly stated." *Id.* at 60.

The issue in this case is whether, and to what extent, as a matter of law, a homestead exemption may not be allowed to a debtor who allegedly converted non-exempt assets to exempt homestead property, allegedly with the intent to defraud creditors. This Court has previously held in *In re Barker (Crews v. First Colony Life Ins. Co.),* 168 B.R. 773 (Bankr.M.D.Fla.1994) that the bankruptcy code does not contain any provision permitting an exemption which is otherwise valid under state law to be disallowed; however, the Court noted that other remedies were available to creditors and the trustee, such as denial of the discharge, avoidance actions under § 548, or dismissal. In *Barker,* although the Court refused to disallow the exemption, the Court did deny the debtor his discharge because the Court found that he did convert non-exempt assets to exempt assets for the purpose of defrauding creditors. *Barker* was decided in the context of annuities which are also exempt under Florida statutory law. The issue of homestead property was not specifically addressed in *Barker.*

 Subsequent to the transfer at issue in *Barker,* the Florida legislature enacted Fla.Stat. § 222.29 and § 222.30. Fla.Stat. § 222.29 states, "An exemption from attachment, garnishment, or legal process provided by this chapter is not effective if it results from a fraudulent transfer or conveyance as provided in chapter 726." Although at least one court has applied this section to disallow a homestead exemption,[2] this Court feels that it is clearly inapplicable to the Florida Constitutional homestead exemption. First, by its own language, Fla.Stat. § 222.29 only applies to exemptions "provided by this chapter." Chapter 222 provides statutory exemptions for annuities, personal property, and other miscellaneous assets. It does not provide the homestead exemption, which is found in the Florida Constitution. Secondly, under the basic rules of construction, statutory laws enacted by the legislative body cannot impair rights given under a constitution. It would take an amendment to the Florida Constitution to restrict the right to homestead exemption. The mere passing of a statute by the Florida Legislature cannot restrict the Florida Constitution. There is no question that the disallowance of fraudulent conversions of exempt assets in Fla.Stat. § 222.29 does not extend to homestead.

The next issue is whether the Court's holding in *Barker,* that an otherwise valid exemption under state law cannot be disallowed by the bankruptcy code, is true for homestead property, as well as annuities. The Court

---

**2.** See *In re Thomas,* 172 B.R. 673 (Bankr. M.D.Fla.1994) (Briskman, J.).

believes that it is. Other courts have also held that the homestead exemption cannot be disallowed, even if the intent was to defraud creditors. In *Bank Leumi Trust Co. of New York v. Lang,* 898 F.Supp. 883 (S.D.Fla. 1995), the court expressly found that bankruptcy debtors had converted non-exempt assets to exempt assets for the purpose of defeating creditors' claims. However, the court, relying on *Butterworth v. Caggiano,* 605 So.2d 56 concluded that the homestead exemption could not be disallowed for fraudulent conduct.

> Similarly, the homestead exemption does not contain an exception for real property which is acquired in the state of Florida for the sole purpose of defeating the claims of out-of-state creditors. In light of the Supreme Court's admonition in the [*sic*] *Caggiano* that the three exceptions to the homestead exemption should be read narrowly, this Court is unwilling to graft an additional exception. *Bank Leumi Trust Co. of New York v. Lang,* 898 F.Supp. at 887.

The court in *Bank Leumi* distinguished a recent Florida Supreme Court case which placed an equitable lien on a debtor's homestead for the benefit of a defrauded creditor. In *Palm Beach Savings & Loan Ass'n v. Fishbein,* 619 So.2d 267 (Fla.1993), a husband had obtained a mortgage on his homestead from the plaintiff bank by forging his wife's signature on loan documents. The Florida Supreme Court placed an equitable lien on the homestead property for the benefit of the bank. The court in *Bank Leumi* distinguished this and other Florida cases which imposed equitable liens on homestead property, by pointing out that the common point among all of these cases was that the funds obtained from the creditors in these cases had been fraudulently or illegally obtained, and then invested in homestead property to defeat the claim of the creditor. That was not the factual situation in *Bank Leumi,* nor in this case. The *Bank Leumi* court also pointed out that the Florida Supreme Court in *Caggiano* in refusing to allow a forfeiture of homestead property, specifically stated that the illegal proceeds in that case had not been used to purchase or improve the homestead property sought to be forfeited. In the

Florida cases which imposed equitable liens, that distinction seems to be crucial. Even in *Fishbein* and similar cases, the exemption was not technically disallowed, but rather an equitable lien was imposed for the benefit of the creditor. Likewise, this Court stated in *Barker* that, although the exemption would not be disallowed, there were other remedies available to a creditor who believes he has been defrauded by a debtor, such as objection to discharge, an avoidance action, or dismissal.

In the instant case, the claim of Locomotion was not fraudulently or illegally procured by Debtor. The claim is a result of a guaranty of a lease agreement between Locomotion, the Debtor, and several other parties. There has been no allegation or evidence presented, that Debtor fraudulently incurred this debt.

Subsequent to *Bank Leumi,* other Florida courts have held that the homestead exemption cannot be disallowed, even if the debtor fraudulently converted property from non-exempt to exempt status to defeat the claims of creditors. In *In re Popek,* 188 B.R. 701, 704 (Bankr.S.D.Fla.1995), the court followed *Bank Leumi* and *Caggiano* in holding that the exceptions to the homestead exemption must be strictly construed, stating that,

> Unless the facts are such that they fall within one of the three exceptions specifically provided by Article X, § 4(a), this Court cannot deny the instant Debtor his homestead. Even if the purpose of the Debtor's actions was to defeat the claims of [the creditor], this Court is without the power to create additional exceptions to protections granted by the Florida Constitution.

The *Popek* court also distinguished *Fishbein* stating that "the funds used by the Debtor to obtain the homestead are not traceable to the objecting creditor." *Popek,* 188 B.R. at 703.

Similarly in *In re Lane (Ezrol v. Lane),* 190 B.R. 125 (Bankr.S.D.Fla.1995), Judge Ray made an almost identical ruling to his ruling in *Popek* in holding that a homestead exemption could not be disallowed, even assuming that the debtor acquired the homestead to defeat creditors' claims. The court also noted that the proceeds of the creditor's claim was not used to procure the homestead in that case.

■ This Court agrees with Judge Ray and the *Bank Leumi* court that the exceptions to the homestead exemption in the Florida Constitution must be strictly construed. The Constitution specifically lists three instances when a debtor's homestead may be used to satisfy the claim of a creditor. Conversion of non-exempt to exempt assets is not one of them. It is not within the power of this Court to create a new exception to the homestead exemption. If property of the debtor is indeed, valid homestead property, then the property is exempt. The Court will not look behind the exemption to see how the debtor acquired the property. If the property is homestead, it is exempt. End of inquiry. However, that is not to say that there are not other remedies available to a creditor. As in *Barker*, this Court will not disallow an exemption, even if the property was acquired with previously non-exempt funds in order to defeat claims of creditors. However, the creditor may still object to discharge, move to dismiss the case, or pursue an avoidance action. The creditor is not entirely without remedies.

Since the Court has found, as a matter of law, that a homestead exemption cannot be disallowed on the basis that non-exempt assets were used to acquire it, there is no need to continue or consolidate this matter with Locomotion's pending adversary proceeding. Both parties stipulated that the property at issue is the Debtor's homestead. That is the end of the inquiry, as far as the Objection to Exemptions goes. Whether the property was purchased with the intent to hinder, delay or defraud Locomotion, which the Court is certain will be argued in the pending adversary proceeding, is not relevant to the Objection. Therefore, the Court will deny the Motion to Continue and Consolidate and overrule the Objection.

A separate final order will be entered in accordance with the foregoing.

### ORDER OVERRULING OBJECTION TO CLAIM OF EXEMPTIONS AND DENYING MOTION TO CONTINUE AND CONSOLIDATE

This case is before the Court upon an Objection to Debtor's Claim of Exemptions filed by Locomotion Properties, Ltd. and a Motion to Continue and Consolidate Hearing on Objection to Exemptions also filed by Locomotion. Based upon Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

1. The Objection to Debtor's Claim of Exemptions filed by Locomotion Properties, Ltd. is overruled.

2. The Motion to Continue and Consolidate Hearing on Objection to Exemptions is denied.

**DONE AND ORDERED.**