217 B.R. 336 (1997)
In re Sandra R. PAUL, Debtor.
Soneet R. KAPILA, Trustee, Plaintiff/Appellant,
v.
Lawrence S. PLAVE, PFG, Inc., and Lewis B. Freeman, Inc., Defendants/Appellees.
No. 97-1786-CIV.
United States District Court, S.D. Florida.
August 26, 1997.
*337 Leslie Osborne, Boca Raton, FL, for Plaintiff.
Steve Silverman, Miami, FL, for Defendant.
ORDER REVERSING BANKRUPTCY COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW; REMANDING FOR TRIAL
JAMES LAWRENCE KING, Senior District Judge.
THIS CAUSE comes before the Court upon an appeal of the Findings of Fact and Conclusions of Law ("Findings of Fact") issued March 7, 1997, in U.S. Bankruptcy Court in Adversary Case No. 96-0819-BKC-AJC.
The Court has reviewed the brief of Plaintiff/Appellant, Soneet R. Kapila, the Trustee, filed July 29, 1997; and the answer brief, filed August 20, 1997, of the three Defendants/Appellees, Lawrence S. Plave, PFG, Inc., and Lewis B. Freeman, Inc. Additionally, the Court heard oral argument from the parties on August 19, 1997.
Trial in the bankruptcy case was held March 5, 1997, before the Honorable James A. Goodman, Chief Bankruptcy Judge for the District of Maine (sitting by designation). At the close of Plaintiff's case, the court granted Defendants' ore tenus Motion For Involuntary dismissal, pursuant to Rule 52(c) of the Federal Rules of Civil Procedure as made applicable by Rule 7052 of the Bankruptcy Rules of Procedure, and ordered Defendants' counsel to submit proposed Findings of Fact and Conclusions of Law, which counsel did. On March 7, the court entered written Findings of Fact and Conclusions of Law in which he ruled that the Trustee had failed to meet his burden of proof under Florida Statutes § 726.105.[1] Specifically, the court found that the Trustee had failed to establish that the transfer of $45,000 from Debtor, Sandra Paul, to Defendants on July 2, 1993, was a fraudulent transfer.[2]
The Court reviews the Bankruptcy Court's findings of fact under the clearly erroneous standard, see e.g., Fed.R.Civ.P. 52 advisory committee notes, and the conclusions of law under the de novo standard.
The Court finds that reversal is appropriate because the bankruptcy court erred on several critical findings of fact. The record shows that the Trustee made out at least a prima facie case that the transfer was fraudulent. Florida Statutes § 726.105 sets forth the elements constituting a fraudulent transfer. It states in relevant part:
(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
(b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) Intended to incur, or believed or reasonably should have believed that he *338 would incur, debts beyond his ability to pay as they became due.
Fl.Stat. § 726.105(1) (West 1988 & Supp. 1997).
In determining whether a debtor harbored actual intent as referred to in § 726.105(1)(a), eleven factors, or badges of fraud, listed at § 726.105(2)(a)-(k) may be considered. The Court finds that the Trustee has proved, for purposes of going forward with trial, at least four of those badges.
The Bankruptcy Court found that "Debtor did meet and confer with Plave in connection with the RTC action and other matters, and from time to time may have assisted Plave in the defense of those matters." (Findings of Fact at 3.) The record is to the contrary. Debtor transferred $45,000 of her own money[3] to Mr. Plave in payment for services rendered by Mr. Plave to Debtor's husband.[4] Debtor testified that Mr. Plave did no work for her, that she owed no money to him, (Tr. at 34), and that the transfer was for her husband's benefit, (id. at 59). She testified that the extent of her interaction with Mr. Plave involved questions such as "What do you think is going to happen in David's criminal case?" and "When will the indictment come down?" and "How do you feel?" (Id. at 49-50.) The Court finds that the transfer was the equivalent of Debtor transferring money to her husband, and thus to an "insider" as referred to in § 726.105(2)(a).[5]
Section 726.105(d) lists a badge of fraud as "Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit." At the time of the transfer, Debtor was being sued by the Resolution Trust Corporation. On her bankruptcy schedule, Debtor valued the RTC's claim (albeit disputed) at $1.2 million, (Pl.'s Am. Ex. Register Ex. 1 at 11); in December 1995, the RTC obtained a judgment against her for $1.2 million, (Tr. at 40-41). The court acknowledged the existence of this badge of fraud but found it alone to be insufficient to show fraudulent intent by the Debtor. (Findings of Fact at 5 n. 2.)
Section 726.105(h) states, "The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred." The court found that "[t]he Debtor further testified that her former husband transferred other assets to her as consideration for her payment of some of her former husband's bills." (Id. at 3.) As discussed supra, Mr. Plave performed no work for Debtor, (Tr. at 34), so he did not provide Debtor with reasonably equivalent value. Further, the record does not identify any assets given by Mr. Paul to the Debtor in exchange for the $45,000 transfer.[6]
Section 726.105(i) states, "The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." Debtor filed for Chapter 7 bankruptcy on July 25, 1994, i.e., one year and three weeks after the transfer. In her bankruptcy schedules, Debtor lists assets of $56,232 and liabilities of $1,720,340, for a net liability of $1.66 million. The Trustee argues that Debtor's financial condition at the time *339 of the petition was little changed from her condition on the date when Debtor transferred the $45,000 to Mr. Plave. The record bears out the Trustee.[7] The Court finds that the Trustee made out a prima facie case that Debtor was insolvent at the time of the transfer.[8]
In sum, for purposes of the Trustee's prima facie case and for proceeding with a full trial, Debtor, while insolvent and while being sued, used her own money to pay a $45,000 debt owed by her husband to a third party for which she received no reasonably equivalent value from either the third party or her husband.
Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is
ORDERED and ADJUDGED that the Bankruptcy Court's Findings of Fact and Conclusions of Law be and it is hereby REVERSED. The case is REMANDED to the Bankruptcy Court for trial.
DONE and ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami Florida, this 25th day of August 1997.
NOTES
[1] The case was brought pursuant to 11 U.S.C. § 544, which allows a trustee in bankruptcy to rely on available state-law remedies when seeking to avoid a fraudulent transfer.
[2] The court stated that the Trustee had failed to meet his burden of proof under either the clear and convincing standard or the preponderance of the evidence standard. The correct standard by which to judge whether a transfer is fraudulent under Florida law is the preponderance of the evidence standard. See Wieczoreck v. H & H Builders, Inc., 475 So.2d 227 (Fla.1985).
[3] The money came out of an account in the name of S.P. Orono, Inc., held at the Bangor Savings Bank, in Maine. Debtor was the sole owner of S.P. Orono, Inc, (Tr. at 17), and the $45,000 constituted part of the proceeds from the sale of Debtor's home in Connecticut, (id. at 17-18 & 29-32).
[4] Although Appellee's brief states that Ms. Paul had divorced Mr. Paul before July 25, 1994, the date on which she filed a petition for relief under Chapter 7 of the Bankruptcy Code, the trial transcript quotes Ms. Paul as testifying that she divorced around March 1996. (Tr. at 12.)
[5] Section 726.103 defines insider as a "[a] relative of the debtor."
[6] In exchange for paying some of her husband's bills, the court stated, Mr. Paul gave the Debtor "an asset . . . which was an assignment of that claim to you." (Tr. at 53.) "That claim" refers to a pending claim that Mr. Paul had against a bank. (Id. at 52.) Debtor listed the value of that claim as "unknown" in her bankruptcy petition, (Pl.'s Am.Ex. Register Ex. 1 at 8), and never received any money from that claim, (Tr. at 53-54). Further, the court found that, sometime before 1993, Mr. Paul transferred his interest in a Connecticut home to Debtor and that the Debtor used $45,000 of the proceeds from her sale of that home to pay Mr. Plave. (Findings of Fact at 3.) This Court, however, finds nothing in the record related to any transfer of an interest in a home from Mr. Paul to Debtor, and Debtor testified that the house was hers alone. (Tr. at 26-27.)
[7] The only substantial difference between Debtor's financial condition on July 25, 1994, and July 2, 1993, centers on a deposit of $184,310 into the S.P. Orono, Inc., bank account on July 1, 1993. (See Pl.'s Am.Ex. Register Ex. 2 at 1.) In addition to the check to Mr. Plave, written on July 2, 1993, Debtor also wrote two checks, for $19,310 and $20,000, to herself from the same account on that date. (See Tr. at 35-37.)
[8] Section 726.103 defines insolvency for individuals in two ways:

(1) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation[; or]
(2) A debtor who is generally not paying his debts as they become due is presumed to be insolvent.
Fl.Stat. § 726.103(1)-(2) (West 1988 & Supp. 1997).