**In re David A. YOUNG, Debtor.**

**Bankruptcy No. 98–010634–3F3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 18, 1999.

667

Bryan K. Mickler, Jacksonville, Florida, for debtor.

Michael Bowlus, Jacksonville, Florida, for Sharon L. Young.

Mamie L. Davis, Jacksonville, Florida, Chapter 13 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on Creditor's Objection to the Debtor's Homestead Exemption ("Objection") filed by Sharon L. Young, former wife of David A. Young, on February 5, 1999. (Doc. 13.) A hearing on this Objection was held March 31, 1999 and the matter was taken under advisement. Upon review of the file and submissions of the parties, the Court enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

David A. Young ("Debtor") and Sharon L. Young ("Ex–Wife") entered a Marital Separation Agreement on April 1, 1993, providing in pertinent part, that:

> Petitioner [David A. Young] shall convey by Quit Claim Deed all of his right, title and interest in the real property identified as the marital residence located at 4211—34th Avenue, Moline, Illinois.... Petitioner shall be responsible for the second mortgage at IH Mississippi Valley Credit Union in the amount of approximately $35,000.00 ...

Debtor and his current wife, Lyuba V. Young, began planning to move to Florida in early 1996. In March of 1997, Debtor contacted realtors and planned the sale of rental property located in Illinois. In March of 1998 this rental property was sold.

On June 23, 1998 a Special Warranty Deed was recorded in Duval County noting David A. Young and Lyuba V. Young as holders of real property described as: Lot 59, Waverly Place Unit One, According to the Plat thereof recorded in Plat Book 49, Page 1, 1A, 1B and 1C of the current public records of Duval County, Florida. The purchase price of this house was $109,000.00. Debtor used approximately $9,900.00 of proceeds from rental property in Illinois as a down payment and approximately $4,000.00 of the same proceeds to cover closing costs. Duval County has appraised the home at $94,738.00 value for tax purposes. On July 31, 1998 Debtor and his current wife filed a homestead application for the Duval County real property.

On December 17, 1998 Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Debtor's Schedule C—Property Claimed As Exempt, filed on December 31, 1998, lists the Duval County property described above as exempt under Article 10 Section 4 of the Florida Constitution.[1]

On February 5, 1998 Debtor's Ex–Wife filed a proof of claim in the amount of $22,120.00, listed as unsecured and nonpriority, based on the second mortgage noted in the marital separation agreement.[2] She also filed a proof of claim for $5,000.00, listed as unsecured and nonpriority, based on a personal loan to Debtor.

Ex–Wife's Objection is based on the fact that Debtor used funds from the sale of non-exempt property located outside of Florida to make a down payment on his homestead property in Florida. Ex–Wife claims the homestead exemption should be disallowed in the amount of the non-exempt funds used to purchase Debtor's interest in homestead property. Ex–Wife further claims that the use of these funds and the transfer of interest in the homestead to Debtor's current wife were done with the intent to hinder, delay and defraud creditors.

### CONCLUSIONS OF LAW

█ The Constitution of the State of Florida grants debtors a liberal exemption for homestead property at Article X, § 4 which provides:

> There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvements or repair thereof, or obligations contracted for house, field or other labor performed on the realty, ....

█ The issue posed by Ex–Wife's Objection is whether a claimed Florida

---

1. Debtor lists the current market value of this real property at $100,000.00. The property is encumbered with a first mortgage in favor of Countrywide Home Loans in the amount of $98,271.59 and a second mortgage in favor of Green Tree Acceptance in the amount of $19,- 126.75, totaling $117,398.34 of secured claims.

2. Debtor lists this second mortgage in favor of IH Mississippi Valley Credit Union as secured in the amount of $22,000.00.

homestead exemption can be disallowed if the homestead is purchased with non-exempt assets with the actual intent to hinder, delay, or defraud creditors in violation of Florida Statute § 726.105.[3] "In quantifying this statutory rule, Florida courts require plaintiffs to demonstrate that: (1) there was a creditor to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been applicable to the payment of the debt due." *Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F.Supp. 1439, 1446 (M.D.Fla.1998) (citing *Johnson v. Dowell*, 592 So.2d 1194, 1196 (Fla.Dist.Ct.App. 1992)).

■ The standard to determine whether a transfer is fraudulent under Florida law is the preponderance of the evidence standard. *Kapila v. Plave (In re Paul)*, 217 B.R. 336, 337 n. 2 (S.D.Fla. 1997) (citing *Wieczoreck v. H & H Builders, Inc.*, 475 So.2d 227 (Fla.1985)). "In determining whether a debtor harbored actual intent as referred to in § 726.105(1)(a), eleven factors, or badges of fraud, listed at § 726.105(2)(a)–(k) may be considered."[4] 217 B.R. at 338. *See Johnson v. Dowell*, 592 So.2d 1194 (Fla. Dist.Ct.App.1992) (fraud rests upon debtor's intent at the time of the transfer).

■ While a single badge of fraud may create a suspicion but not the requisite fraud to set aside a conveyance, several considered together may afford a basis to infer fraud. 592 So.2d at 1197. Debtor testified that in 1996 he decided to move to Florida. In 1997 Debtor began making steps toward moving by looking for a home in Florida and taking steps to sell rental property in Illinois. There is no evidence before the Court showing that Debtor concealed either the rental property sale or the fact that he planned to move to Florida. There is no evidence that Debtor was threatened with suit or had been sued prior to selling the Illinois rental property. Debtor's Schedules list total assets of $126,925.00 and total liabilities of $249,846.96, approximately one-third of this amount is unsecured. Of the $82,634.50 that is listed as unsecured, $68,166.66 is attributed to credit card purchases.

Ex–Wife would like the Court to believe that the totality of the circumstances and the timing and sequence of events leading up to Debtor's bankruptcy filing are sufficient to establish the preponderance of the evidence standard required under Florida law to establish fraud. However, the only evidence before this Court is the sequence of events described above. Other than Ex–Wife's pleadings with this Court, there

---

**3.** That statute provides in the pertinent part that:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor ...

Fla.Stat.Ann. § 726.105 (West 1998).

**4.** Those factors are whether:

(a) The transfer or obligation was to an insider.

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was of substantially all the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Fla.Stat.Ann. § 726.105(b) (West 1998).

is little to no evidence, actual or circumstantial, to support that Debtor acted with intent to hinder, delay or defraud creditors. In fact, Ex–Wife states in her submission to this Court that Debtor was unable to pay his debts as they became due and the sum of those debts was greater than the fair valuation of Debtor's assets.

In support of her position, Ex–Wife cites *In re Coplan,* 156 B.R. 88 (Bankr.M.D.Fla. 1993) (Briskman, J.), *In re Bandkau,* 187 B.R. 373 (Bankr.M.D.Fla.1995) (Corcoran, J.), and *In re Thomas,* 172 B.R. 673 (Bankr.M.D.Fla.1993) (Briskman, J.).

In the *Coplan* case, Judge Corcoran found debtors' relocation to Florida was for the specific purpose of shielding assets from creditors and reduced debtors' homestead exemption to the amount of the exemption that debtors would have in the state they moved from. *In re Coplan,* 156 B.R. at 92. Those debtors paid $288,-000.00 cash for a Florida home within a day of selling their home in Wisconsin, a state entitling debtors to a $40,000.00 homestead exemption. *Id.* at 91. Soon after the move, a judgment was entered against Mr. Coplan in the amount of $1,081,839.69. This judgment was based on Mr. Coplan's personal guaranty on a line of credit for Mr. Coplan's former business, which he abandoned near the time he and his wife moved to Florida. Between the move to Florida and the date of the judgment, the debtors liquidated the majority of their non-exempt assets and used the proceeds to live on.

In the *Bandkau* case, debtors, after years of planning, sold certain assets and then abandoned their Miami veterinary clinic with a note still due on the clinic. *In re Bandkau,* 187 B.R. 373. Debtors also liquidated nonexempt assets and paid cash for a home in Zephyrhills. Judge Corcoran found the debtors knowledgeable concerning bankruptcy protection and broke down the equity in debtors' Zephyrhills home into amounts attributable to previously exempt assets versus nonexempt assets. The percent of home value attributable to nonexempt purchase funds was to be administered by the bankruptcy estate while the portion attributable to exempt purchase funds remained homestead property of the debtors. *Id.* at 381.

In the *Thomas* case, debtors sold an automobile free of liens two days prior to filing for bankruptcy protection and put the proceeds toward mortgage payments on their exempt homestead. *In re Thomas,* 172 B.R. at 674. The debtors did so intending to maximize their exempt property. The Court found this conversion of nonexempt assets into exempt assets was a fraudulent conveyance and disallowed the exemption in the amount of the conversion. Judge Briskman, found those debtors, after receiving legal advice to act in such a manner, did actually intend to hinder or delay creditors.

The Court disagrees with the holdings in the cases cited by Ex–Wife and stands on its holding in *In re Clements,* 194 B.R. 923 (Bankr.M.D.Fla.1996). The trend in Florida is to permit debtors to convert nonexempt assets into a homestead. *See* Jules S. Cohen, *The Use of the Florida Homestead to Defraud Creditors,* 72 Fla.B.J. 35 (1998). However, upon addressing the issue of fraudulent intent, the Court notes the recent 11th Circuit decision of *Key Bank v. Jost (In re Jost),* 136 F.3d 1455, which remanded a case to the Bankruptcy Court to determine whether transfers were made with intent to hinder, delay, or defraud any creditor. 136 F.3d at 1459. In discussing whether a claimed Florida homestead exemption can be successfully challenged if the home is purchased with nonexempt assets with the actual intent to hinder, delay, or defraud creditors in violation of Fla.Stat. § 726.105, the Eleventh Circuit stated:

In *Bank Leumi Trust Co. v. Lang,* 898 F.Supp. 883 (S.D.Fla.1995), the district court answered that question in the negative. Our research leads us to believe that this question is a significant issue of Florida law with respect to which the

Florida precedent is not clear. If the Bank Leumi issue were necessarily presented in this case, we would certify the question to the Florida Supreme Court, believing as we do that a legal issue of such significance should be settled by that Court.

However, we are not persuaded that the Bank Leumi issue must necessarily be decided in this case, and we are reluctant to certify the question and impose on the good graces of the Florida Supreme Court in such a context. The legal question would have to be decided only if the bankruptcy court had made a finding of fact (which we could affirm) that Jost's purchase of her home and/or her prepayment of the home mortgage were transfers with intent to hinder, delay, or defraud any creditor.[FN15] For the reasons set out below, we cannot conclude that the bankruptcy court made such a finding of fact. For the same reasons, we conclude that the appropriate resolution is to remand this case.

FN15. In other words, if the transfers were not with intent to hinder, delay, or defraud creditors, then Jost would prevail and there would be no need to address the Bank Leumi issue. If the bankruptcy court finds that Jost's transfers were with intent to hinder, delay, or defraud her creditors, then the bankruptcy court should attempt to resolve the Bank Leumi issue. If this decision were then appealed to the district court and subsequently to this court, then we would be inclined to certify the Bank Leumi issue to the Florida Supreme Court.

136 F.3d at 1458–59 (citations omitted) (footnotes omitted).

█ The Court does not disagree that the debtors in those cases denying debtors' homestead exemptions acted with fraudulent intent. However, despite this Court's finding that no fraud exists in the case at hand, the Court would not extend the narrow exceptions to Florida's home-

stead exemption without Amendment to the Constitution or other binding authority. Under basic rules of construction, statutory laws enacted by legislative bodies cannot impair rights given under a constitution. 194 B.R. at 925.

In the *Clements* case, the Court stated:

[H]omesteads in Florida may not be used to satisfy court judgments except in three specifically enumerated instances: (1) unpaid property taxes for the homestead itself, (2) mortgages for the purchase or improvement of the homestead itself, or (3) mechanic's liens for work performed on the homestead. These are the only three instances in which a homestead may be used to satisfy a debt. In a widely cited case, the Florida Supreme Court held that this provision prohibited civil or criminal forfeiture of the homestead because it was not a specifically enumerated exception to the homestead exemption in the Constitution. *Butterworth v. Caggiano*, 605 So.2d 56 (Fla.1992). "Under the rule "expressio unius est exclusio alterious"—the expression of one thing is the exclusion of another—forfeitures are not excluded from the homestead exemption because they are not mentioned, either expressly or by reasonable implication, in the three exceptions that are expressly stated." *Id.* at 60.

The issue in this case is whether, and to what extent, as a matter of law, a homestead exemption may not be allowed to a debtor who allegedly converted non-exempt assets to exempt homestead property, allegedly with the intent to defraud creditors. This Court has previously held in *In re Barker (Crews v. First Colony Life Ins. Co.)*, 168 B.R. 773 (Bankr.M.D.Fla.1994) that the bankruptcy code does not contain any provision permitting an exemption which is otherwise valid under state law to be disallowed; however, the Court noted that other remedies were available to creditors and the trustee, such as denial of

the discharge, avoidance actions under § 548, or dismissal.

*In re Clements,* 194 B.R. at 925.

There is no exception to the homestead exemption when real property is acquired for the sole purpose of defeating the claims of out-of-state creditors. In light of the Supreme Court's admonition in the *Caggiano* case, that the three exceptions to the homestead exemption should be read narrowly, this Court is unwilling to create an additional exception. *Bank Leumi Trust Co. of New York v. Lang,* 898 F.Supp. at 887.

## CONCLUSION

The Court does not doubt the possibility that Debtor moved to Florida solely to maximize exempt property. However, the Court finds the evidence presented insufficient to establish the elements of Florida Statute § 726.105. But even if the evidence clearly showed an intent to defraud creditors, the Court would not grant Ex–Wife the relief she seeks in her Objection. The Florida Constitution specifically lists three instances when a debtor's homestead may be used to satisfy the claim of a creditor. Conversion of non-exempt to exempt assets is not one of them and this Court will not create a new exception to the homestead exemption. If Debtor's property is indeed, valid homestead property, then the property is exempt. The Court will not look behind the exemption to see how Debtor acquired the property.

A separate final order will be entered in accordance with the foregoing.

## *ORDER OVERRULING CREDITORS' OBJECTION TO THE DEBTOR'S CLAIM OF HOMESTEAD EXEMPTION*

This Case is before the Court on Sharon L. Young's Objection to the Debtor's Claim of Homestead Exemption filed February 5, 1999. Based upon Findings of Fact and Conclusions of Law separately entered, it is **ORDERED:**

Sharon L. Young's Objection to the Debtor's Claim of Homestead Exemption is overruled.