In re Cheryl Pauline ISLES and Garfield Cauldric Isles, Debtors.

**Daniel L. Bakst, Trustee, Plaintiff,**

v.

**Cheryl Pauline Isles and Garfield Cauldric Isles, Defendants.**

Bankruptcy No. 01–33728 BKC–SHF.
Adversary No. 02–3049–BKC–SHF–A.

United States Bankruptcy Court, S.D. Florida.

May 5, 2003.

gust 18, 2003 Order and 2) enter a separate order consistent with these Findings of Fact and Conclusions of Law.

Michael R. Bakst, West Palm Beach, FL, for trustee.

Wilbur V. Chaney, Delray Beach, FL, for Debtor.

### *MEMORANDUM DECISION DENYING DISCHARGE*

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS CAUSE came before the Court for trial on September 23, 2002 upon the Plaintiff/Trustee's Complaint Objecting to Discharge. The Court, having considered the evidence presented, arguments of counsel, the depositions of record, and being otherwise fully advised in the premises, enters the following findings of fact and

conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052:

## JURISDICTION

This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I).

## PROCEDURAL BACKGROUND

On July 16, 2001, the Debtors filed their voluntary Chapter 7 bankruptcy petition. The Plaintiff, Daniel L. Bakst, ("Trustee") was thereafter appointed the trustee to administer this chapter 7 proceeding.

The Trustee undertook an investigation of the Debtors' business and financial affairs and began seeking documentation relating to the sale of the Debtors' New Jersey home, which the Debtors sold within one year prior to their joint bankruptcy filing. On October 12, 2002, the Trustee filed his Motion to Compel Production of Documents, for Turnover and for Sanctions Pursuant to Federal Rule of Bankruptcy Procedure 7037. Thereafter, on December 3, 2001, the Court entered its Order Granting Trustee's Motion to Compel Production of Documents and Scheduling Order to Show Cause, requiring the Debtors to turn over to the Trustee certain documentation, including the closing statement and other documents associated with the sale of their New Jersey home, copies of their tax returns for the years 1998, 1999 and 2000, and bank statements for the twelve months preceding the July 16, 2001 petition date. This order also required the Debtors' previous attorney to show cause why attorney fees should not be disgorged. After the December 6, 2001 hearing on the order to show cause, the Court entered its December 20, 2001 Order Discharging Order to Show Cause and Requiring Debtors to Produce Documents, again requiring the Debtors to produce a portion of their bank statements. The Trustee scheduled a Bankruptcy Rule 2004 examination of the Debtors for January 7, 2002. After this examination, the Trustee timely filed his complaint seeking to deny the Debtors' discharge on February 15, 2002.

## FINDINGS OF FACT

The trial of this adversary proceeding began with the Debtors' previous attorney, Greg Wexler, testifying with regard to his legal representation of the Debtors.[1] Mr. Wexler spoke of his consultations with the Debtors, the worksheets which the Debtors completed in preparation for their bankruptcy filing, and the efforts made to cooperate with the Trustee. Mr. Wexler made reference to a copy of a closing statement that he received from the Debtors and forwarded to the Trustee's attorney (Plaintiff's Exhibit 16). Mr. Wexler testified that obtaining information from the Debtors was difficult, and that when the Trustee attempted to obtain documentation from him, the Debtors told him that Mrs. Isles wanted to handle any of the matters dealing with the sale of the New Jersey home. Mr. Wexler stated that he offered to help the Debtors in obtaining the required documentation on many occasions, but that Mrs. Isles repeatedly refused his help. Based on Mr. Wexler's testimony, the Court is satisfied that any omissions on the Debtors' Schedules and Statement of Financial Affairs were not attributable to any failure of Mr. Wexler to properly convert the information from the bankruptcy worksheets to the Schedules and Statement of Financial Affairs. The Debtors' testimony did not refute the testimony of Mr. Wexler.

---

1. The Debtors did not assert any attorney– client privilege as to Mr. Wexler at trial.

Both Debtors testified at trial. Mrs. Isles is a registered nurse and was previously employed in New Jersey. Both she and Mr. Isles first considered filing bankruptcy around the later part of 2000 after the value of Mrs. Isles' money market fund declined substantially. Prior to the trial of the adversary proceeding, neither of the Debtors had disclosed or referenced ownership of any type of stock account. Their Schedule B, which provides a listing of all of a debtor's assets, fails to disclose any type of stock account, and the Statement of Financial Affairs Question 11 fails to disclose this account as a financial account closed within a year of the bankruptcy filing. Mrs. Isles testified that this account was a type of retirement account that lost all of its value. The documents which the Debtors were to produce at their Bankruptcy Rule 2004 examination included all financial account information for the three years prior to their petition date.[2] The Debtors failed to provide this information. Such failure hinders this Court's ability to sufficiently ascertain the state of the Debtors' financial affairs. Once the Trustee requested information relating to such accounts, the Debtors had a responsibility to produce the information. The Court also notes that Mrs. Isles' testimony was inconsistent throughout the trial as to whether she anticipated receiving any money from this account upon retirement.

In addition to the Debtors' failure to list the retirement account on their schedules, Mrs. Isles conceded at trial that she and her husband did not list the new furniture they had purchased at City Furniture for $4,539.01 within three months of the bankruptcy filing. Instead, the Debtors indicated on their original Schedule B–4 that their household goods and furnishings were valued at $995.00. Mrs. Isles testified that this furniture was actually their rental furniture. The Debtors blame the omission of their new furniture from their schedules on the timing of when they provided information to Mr. Wexler. However, during the meetings with Mr. Wexler after the purchase of the City Furniture merchandise, and at the time they signed their Schedule B–4, the Debtors never raised this omission with Mr. Wexler. Mrs. Isles testified that it just did not occur to her to list the furniture purchased from City Furniture on their Schedule B–4. After their Rule 2004 examination wherein the City Furniture merchandise was discovered, the Debtors amended their Schedule B to list the new furniture, but claimed its total value was $2,005.00. The Trustee found it appropriate to file an objection to the claimed exemptions of the Debtors, which objection ultimately was settled with the Debtor's paying the estate an amount equal to the value by which the furniture exceeded the allowable amount for personal property exemptions under Florida law. The Debtors further amended their schedules by listing the City Furniture Lay Away Plan on their Schedule G and disclosing the payment to City Furniture in the response to Question 3 of the Statement of Financial Affairs.

Apparently, it also never occurred to the Debtors to disclose the transfer of their New Jersey home in response to Question 10 of their original Statement of Financial Affairs. Mrs. Isles testified that this sale was not listed because the requirement that the sale be listed on the Statement of Financial Affairs was not explained to her in detail and therefore she was going to have to claim "ignorance" as to this requirement. Throughout the course of their bankruptcy, the Debtors filed various

---

**2.** Specially, paragraph 2 and 3 of the Rule 2004 examination notice related to all possible banking and investment accounts of the Debtors.

amendments to their Schedules and Statement of Financial Affairs. They first amended their response to Question 10 of the Statement of Financial Affairs to list the transfer of the New Jersey home after this issue arose at the first meeting of creditors. However, this amendment was inaccurate because it listed the mortgage broker, Frank Best, as the buyer and listed the transfer date as November 21, 2000.[3] This amendment failed to list a sales price for the property. The Debtors ultimately amended their response to Question 10 of their Statement of Financial Affairs a second time to list the proper buyer, who was Phoenix Braithwaite, to provide the $120,000.00 sale price, and to provide the transfer date of January 30, 2001. This last amendment occurred on April 9, 2002, after this adversary proceeding was filed.

At no time did the Debtors amend their Schedules or Statement of Financial Affairs to disclose that they hold a second mortgage in the amount of $18,000.00 which they received from Mr. Braithwaite as a portion of the purchase price on the closing of their New Jersey home. Because the Debtors denied the existence of this mortgage, the Trustee served an application for turnover upon both Mr. Braithewaite and his attorney who handled the closing, Dawn Manning. The Trustee subpoenaed and deposed both Ms. Manning and Mr. Braithwaite. Ms. Manning testified that in fact there was a second mortgage receivable that would have to be paid, although she did not prepare the second mortgage. Mr. Braithwaite claimed that he was told that the second mortgage was

to be only a "paper entry that would not be recorded" and that it was done "to satisfy the mortgage bank." See Plaintiff's Exhibit 21. However, the fact remains that there was a purchase contract for $120,000.00 (P.Ex. 25), that a mortgage was indeed executed in favor of the Debtors, and that the Debtors were aware of its existence.

The Court finds a lack of credibility by the Debtors regarding the second mortgage. For example, it appears that the Debtors were already anticipating the filing of bankruptcy before the time of the sale [4] and had already moved to Florida. In essence, Mrs. Isles testified that selling their New Jersey home would be pointless if she and her husband were not going to receive anything from the sale. They could have decided to abandon any interest in the New Jersey property since any possible deficiency would be discharged in bankruptcy. Instead, the Debtors proceeded to consummate the sale because they were going to receive some money from the transaction. While the Debtors did not provide the Trustee with any of the documents relating to the closing on the New Jersey home, Ms. Manning produced her accounting ledger (P.Ex. 23), which disclosed that money did go to the Debtors at the closing. The actual closing statement reflected that $10,647.53 was payable to the Debtors from the sale of the property (P.Ex. 22). Furthermore, it appears that the closing statement the Debtors provided to the Trustee (P.Ex. 16) was altered. This altered closing statement blocks out the amount paid to the sellers of the property (the Debtors) and lists a low-

---

**3.** This discrepancy in the closing date is important because Phoenix Braithwaite testified in his deposition, which has been entered into evidence, that he paid $1,300.00 per month rent for three or four months before the closing. P.Ex. 14, pg. 63, line 12 to 25 through pg 64, line 1 through line 15. The Debtors

failed to list rental income anywhere in response to Questions 1 and 2 on their Statement of Financial Affairs.

**4.** According to Mr. Wexler's file the Debtors first met with him on November 17, 2000.

er pay-off amount for the first mortgage holder. After comparing both closing statements, it is clear that the "cash to seller" entry on the original closing statement was altered to reflect that the Debtors did not receive any money from the sale. The Debtors even claimed at the trial that they now think that their signatures on the closing statements have been forged. However, the Debtors themselves provided this document to the Trustee, and they are thus responsible for any representations made within such a document.

The Court finds that the Debtors have willfully and intentionally failed to disclose the transfer of the New Jersey property, including their receipt of funds and a second mortgage securing a note for $18,000.00. The Court further finds that the Debtors have failed to produce documentation requested by the Trustee, including documentation memorializing the $18,000.00 mortgage receivable. In addition, the Court finds that the Debtors have failed to keep and/or preserve relevant documentation as is necessary in order to ascertain their financial condition or business transactions. The record reflects that the documentation produced by the Debtors fails to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet their liabilities.

## LEGAL CONCLUSIONS

The Trustee initiated this adversary complaint objecting to discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), (a)(5), and (a)(6)(A). Based on 11 U.S.C. § 727(a)(3) and 11 U.S.C. § 727(a)(5), this Court **denies** the Debtors' discharge.

Section 727(a)(3) provides that a discharge is to be denied if the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which their financial condition or business transaction might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. Mrs. Isles is a registered nurse and Mr. Isles is a life insurance agent. Both appear to be well-educated and would understand the importance of maintaining proper records, yet the records that they have produced are woefully inadequate. The Debtors repeatedly failed to produce documentation to the Trustee, despite repeated requests by the Trustee, which required the Trustee to obtain court orders requiring document production throughout this case. Further, the Debtors provided the Trustee with documentation that has been altered and documentation that the Debtors now deny signing. The Debtors have failed to produce documentation, including records relating to the stock or retirement accounts Mrs. Isles held or holds, documentation relating to approximately $10,000.00 that they received from the closing on the sale of their New Jersey home, and documentation that would explain why they failed to list the $18,000.00 mortgage receivable.

Debtors have an affirmative duty to provide documents that memorialize their financial history for a reasonable period past to present, and neither the trustee nor the creditors is required to ferret out the required records. *In re Craig,* 252 B.R. 822, 828 (Bankr.S.D.Fla.2000), citing, *In re Caserta,* 182 B.R. 599, 611 (Bankr. S.D.Fla.1995). "It is the debtor's duty to maintain and provide the court with organized records of its financial dealings." *Union Planters Bank v. Connors,* 283 F.3d 896, 899 (7th Cir.2002). As the Seventh Circuit recently stated, "neither the court nor a creditor is required to reconstruct a debtor's financial situation by sifting through a morass of checks and bank

statements." *Id.* The Debtors attempted to shift this responsibility to sift through their financial records to the Trustee. However, such an undertaking is not the Trustee's responsibility. The Debtors had a duty to maintain and provide the Trustee and this Court with organized records of their financial dealings, but the Debtors failed completely to meet this duty. *In re Lordy,* 214 B.R. at 666; *In re Chalik,* 748 F.2d 616 (11th Cir.1984). Accordingly, the Debtors' discharge is denied pursuant to 11 U.S.C. § 727(a)(3).

Section 727(a)(5) provides that a debtor's discharge is to be denied if the debtor has failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet the debtor's liabilities. The initial burden is upon the Trustee to demonstrate that there are any discrepancies between the Debtors' Schedules and Statement of Financial Affairs, and the assets that subsequently have been discovered in the case. Once this is met, the burden shifts to the Debtors to explain these discrepancies. *In re Lordy,* 214 B.R. at 669. In the instant case, the Trustee has met this burden by establishing the undisclosed retirement/stock account, the undisclosed City Furniture merchandise, the undisclosed mortgage receivable, and the undisclosed funds received from the closing on the sale of the New Jersey home. The Trustee has met his initial burden based upon the numerous discrepancies that have been discovered throughout this case and at trial. The Debtors have failed to sufficiently explain these discrepancies.

Vague, indefinite and uncorroborated statements by a debtor do not constitute *satisfactory* explanations for purposes of § 727(a)(5). *In re D'Agnese,* 86 F.3d 732 (7th Cir.1996). In this case, the Debtors repeatedly gave vague indefinite answers as to the disposition of the assets.

Accordingly, the Court hereby denies the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(5).

Regarding the other counts of the Trustee's complaint, including objections to discharge under 11 U.S.C. § 727(a)(2), 11 U.S.C. § 727(a)(4)(A), and 11 U.S.C. § 727(a)(6)(A), the Court finds that insufficient evidence exists to substantiate these counts. Accordingly, it is

**ORDERED** that the Debtors' discharge is **denied** pursuant to 11 U.S.C. § 727(a)(3) and § 727(a)(5).

In accordance with Bankruptcy Rule 7054, a separate Final Judgment Denying Discharge shall be entered.